IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEF MARCH 17, 2004

## GUY VARNADOE v. SHELTON MCGHEE, JR., ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 98-0667-2     Arnold Goldin, Chancellor**

---

**No. W2003-01341-COA-R3-CV - Filed April 14, 2004**

---

Following a remand by this Court, the trial court entered judgment in favor of the Plaintiff in the amount of $10,464.80 plus post-judgment interest from the time of filing of the trial court's original judgment. Defendants appeal. We affirm.

**Tenn. R. App. P 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., joined. W. W. FRANK CRAWFORD, P.J., W.S., filed a concurring opinion, dissenting in part.

Adam M. Nahmias, Cordova, Tennessee, for the appellants, Shelton McGhee, Jr. and wife, Sandra T. McGhee.

John D. Horne, Memphis, Tennessee, for the appellee, Guy Varnadoe.

### OPINION

This matter returns to this Court following a remand to the trial court. The background of this case is set forth in the Court's previous opinion as follows:

> On March 23, 1998, the Appellee, Guy Varnadoe ("Mr. Varnadoe"), entered into a written contract with the Appellants, Sandra and Shelton McGhee ("the McGhees"), whereby Mr. Varnadoe agreed to complete a framing project at the McGhees' residence in Memphis, Tennessee. The contract required Mr. Varnadoe to complete the framing project in a "workmanlike manner" and within approximately two weeks, weather permitting, from the date the contract was signed. The contract provided that the McGhees would pay Mr. Varnadoe $12,040.00 to perform the framing project. Mr. Varnadoe did not have a residential contractor's license or a home improvement contractor's license.

Mr. Varnadoe commenced work on the framing project. The McGhees claim that disputes arose between the parties concerning the timeliness and quality of Mr. Varnadoe's work. Mr. Varnadoe claims that he substantially completed the framing project on April 13, 1998. Mr. Varnadoe claims that he was unable to proceed to completion by hanging windows, however, because the windows had not been provided by the McGhees. [sic] The McGhees refused to pay Mr. Varnadoe. On April 15, 1998, Mr. Varnadoe served a notice of nonpayment upon the McGhees. On June 11, 1998, Mr. Varnadoe filed a mechanic's and materialmen's lien ("lien") against the McGhees' residence in the Office of the Register of Shelby County.

On July 28, 1998, Mr. Varnadoe filed a complaint against the McGhees in the Chancery Court of Shelby County to enforce the lien as well as for damages for breach of contract. On September 25, 1998, the McGhees filed an answer and counterclaim for breach of contract against Mr. Varnadoe. On July 20, 1999, the McGhees filed a motion to dismiss Mr. Varnadoes' complaint based on his failure to have and maintain a home improvement contractor's license in violation of section 62-37-101 et seq. of the Tennessee Code. On July 21, 1999, Mr. Varnadoe filed an answer to the counterclaim. On December 9, 1999, Mr. Varnadoe filed a response to the motion to dismiss. On February 2, 2000, the trial court denied the motion to dismiss.

On February 28, 2000, the trail court entered a consent order requiring the McGhees to deposit the amount of the disputed lien, $12,436.00, with the court clerk and referring the case to a Special Master. Pursuant to that consent order, the trial court directed the Special Master to conduct an investigation and report his findings to the trial court on the following questions:

1. Did Mr. Varnadoe perform the framing work in accordance with the specifications set forth in the parties' March 23, 1998 contract?

2. Did Mr. Varnadoe perform the framing work contemplated by the contract in a workmanlike manner?

3. Did Mr. Varnadoe complete the framing work contemplated by the contract in a timely manner?

4. If Mr. Varnadoe performed his obligations under the contract, the Special Master shall determine the reasonable value of the work performed by Mr. Varnadoe, his agents, subcontractors, and/or employees.

5. If the Special Master shall find that Mr. Varnadoe failed to perform his obligations set forth in the contract in accordance with specifications, in a good and workmanlike manner, and/or in a timely manner, the Special Master shall set forth

with particularity each element of the contract that Mr. Varnadoe failed to perform, as well as the factual basis for each such conclusion.

6. If the Special Master shall find that Mr. Varnadoe failed to perform his obligations set forth in the contract in a good and workmanlike manner, in accordance with its terms and conditions, and/or in a timely manner, the Special Master shall determine the nature and amount of damages that were directly and proximately caused by Mr. Varnadoe.

On June 26, 2000, the Special Master submitted his report to the trial court. In conducting his investigation, the Special Master met with the parties, inspected the property, consulted with two general contractors, an reviewed the court pleadings, the potential evidence, and the records pertaining to this case. The Special Master found that Mr. Varnadoe performed the framing work in a workmanlike manner, in a timely manner, and in accordance with the specifications set forth in the contract. The Special Master also found that there was no evidence of any damages caused by Mr. Varnadoe. The Special Master concluded that Mr. Varnadoe was entitled to full payment under the terms of the contract in the amount of $12,040.00. The Special Master also concluded that the McGhees were entitled to a set-off for the costs of installing windows and the performance of certain punch list and related remedial work items. The Special Master limited his findings to the specific questions submitted by the trial court. No exceptions were filed to the Special Master's report.

On July 11, 2000, Mr. Varnadoe filed a motion to confirm the Special Master's report, to award costs, and to enter judgment. On July 20, 2000, the McGhees filed an opposition to the motion to confirm. On July 26, 2000, Mr. Varnadoe filed his affidavit and his attorney's affidavit in rebuttal to the opposition to the motion to confirm. On July 28, 2000, the trial court held a hearing on the motion to confirm. On October 19, 2000, the trial court entered a judgment in favor of Mr. Varnadoe in the amount of $10,890.00 after giving the McGhees a set-off of $1,150.00. The trial court denied Mr. Varnadoe's request for discretionary costs and ordered that the fees approved by the Special Master be divided equally between Mr. Varnadoe and the McGhees. On November 14, 2000, the McGhees filed a motion to alter or amend judgment. On November 16, 2000, Mr. Varnadoe filed an opposition to the motion to alter or amend judgment. On December 14, 2000, the trial court denied the motion to alter or amend judgment.

*Varnadoe v. McGhee*, No. W2001-00075-COA-R3-CV, 2001 WL 1683799, at \*1-2 (Tenn. Ct. App. Dec. 27, 2001), *perm. app. denied* (Tenn. June 3, 2002).

This Court determined that Mr. Varnadoe was an unlicensed home improvement contractor but determined that the application of *quantum meruit* was proper. Therefore, this Court reversed

the judgment of the trial court permitting Mr. Varnadoe to recover on the contract and remanded this cause "for a determination of the actual documented expenses incurred by Mr. Varnadoe." *Id*. at *6.

On remand, Mr. Varnadoe presented sixteen checks which he testified were written to pay his employees for work on the McGhee job. The checks totaled $10,172.00. By agreement, copies of the checks were made an exhibit so that Mr. Varnadoe could keep the originals. He stated that his normal procedure, and the procedure which he followed on this job, was to pay the employees by check, which they then endorsed and returned to him, and he would then give them a like amount in cash. He explained that the reason for this procedure is that many of the employees do not have identification or bank accounts and thus have difficulty in getting their checks cashed. He testified that when he signed the contract he was to be paid when the job was concluded. He explained to his men that he would be unable to pay them until the job was completed.

Mr. Varnadoe testified that Mr. McGhee's roofer failed to show up. Mr. McGhee called him about 2:00 in the morning after it began to rain. Mr. Varnadoe then purchased a pool cover, and, with the aid of a couple of his men, covered the roof off with a pool tarp. Without objection, a copy of the invoice for the pool cover in the amount of $292.82 was made an exhibit. This resulted in a total of $10,464.80. He further testified that each of his employees were given a form 1099.

James Hull testified that he worked construction framing houses and had worked for Mr. Varnadoe for about ten years. He testified that he worked on the job for Mr. Varnadoe at the house on Corporal and Winchester for approximately two weeks. Mr. Hull was shown a copy of a check drawn on Varnadoe Construction payable to him and identified his signature on the back of the check. He described the same method of payment as had previously been described by Mr. Varnadoe. He also identified a second check payable to him and identified his signature on the back of that check as well.

On cross-examination, Mr. Hull was shown check # 3633 payable to him in the amount of $520.00 dated April 10, 1998. When asked whether that was the date he was given the check, he replied that he did not recall but that he was no longer working on the McGhee project at the time he was given that check. The trial court entered judgment in favor of the plaintiff, Guy Varnadoe, in the amount of $10,464.80 plus post-judgment interest at the statutory rate of 10% per annum from October 19, 2000 which, at the time of trial on April 4, 2000, had accrued to $2,570.58.[1]

The Appellants present the following issues on appeal:

---

[1]The court further ordered that

> the Clerk and Master of this Court should be directed and authorized to disburse to the Plaintiff funds previously deposited in this case to be applied to satisfy this Judgment. In the event funds on deposit with the Court shall exceed the amount of the Judgment and accrued interest set forth above, then any excess deposit should be refunded to Defendants; however, if the funds on deposit with the Court shall not be sufficient to satisfy the above Judgment and accrued interest, then the Plaintiff should be entitled to pursue execution to recover the unpaid amount of the above Judgment and accrued interest.

1.    Did the Trial Court commit error by holding that Appellee Guy Varnadoe (hereinafter "Varnadoe") proved his "actual documented expense" by "clear and convincing proof" as required by Tenn. Code Ann. § 62-6-103(b) and this Court's decision filed on December 21, 2001?

2.    Did the Trial Court commit error by awarding post-judgment interest to Varnadoe from the date of the entry of the original judgment on or about October 19, 2000?

This Court held in the previous opinion that Mr. Varnadoe is permitted to recover under *quantum meruit* limited to the actual documented expenses extended on the framing project as shown by clear and convincing proof. This standard was described in *In re Estate of Walton v. Young*, 950 S.W.2d 956 (Tenn. 1997) as follows:

The "clear and convincing" standard falls somewhere between the "preponderance of the evidence" in civil cases and the "beyond a reasonable doubt" standard in criminal proceedings. To be "clear and convincing," the evidence must "produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Hobson v. Eaton*, 19 Ohio Misc. 29, 399 F.2d 781, 784 n.2 (6th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S. Ct. 1189, 22 L.Ed.2d 459 (1969). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). *See e.g. In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993).

*Id*. at 960 (quoting *Fruge v. Doe*, 952 S.W.2d 408, 412 n. 2 (Tenn. 1997)).

Appellants contend that Varnadoe failed to prove by clear and convincing evidence his entitlement to a judgment. In support of this argument, they contend that the only proof of the payments that Varnadoe made to his laborers on the McGhee project was his testimony and copies of checks which Varnadoe testified were tendered to his laborers. Varnadoe testified that he provided his laborers with 1099 tax forms, but Appellants contend that these forms were not introduced as evidence. They also argue that, except for James Hull, none of the other laborers testified at trial. They further argue that none of the checks made reference to the McGhee project or, for that matter, any other job. It is also argued that Varnadoe introduced no payroll records, time sheets or other documentation.

As heretofore noted, Mr. Varnadoe testified to the manner in which his employees were paid and that each of the checks represented payment on the McGhee job. The method of payment was confirmed by Mr. Hull. Mr. Varnadoe and Mr. Hull presented the only testimony at the remand hearing. It is obvious that the chancellor gave credence to their testimony. He had the opportunity to observe the witnesses as they testified and to assess their demeanor. Therefore, he was in a more favorable position than this Court to resolve credibility. This Court will not reevaluate a trial court's

assessment of witness credibility absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Having reviewed the record before us *de novo*, we are convinced, as was the court below, that the Plaintiff presented clear and convincing evidence to support the judgment entered below.

Appellants next argue that the trial court erred in awarding post-judgment interest from the date of the original judgment of October 19, 2000. They argue that when this case was remanded, "this negated any right of Varnadoe to recover post-judgment, or any other interest, on the original Judgment entered on October 19, 2000." They contend that, since the original judgment made no mention of post-judgment interest, nor did this Court address it in the previous opinion, that the awarding of same was in error. No authority is cited by the Appellants in support of this argument. Tennessee Code Annotated § 47-14-122 provides:

> Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

We note that the statute uses the term "verdict." However, we construe the statute to mean that in a non-jury trial, post-judgment interest shall run from the date of the entry of the court's judgment. An appellate court decision that modifies or reverses a trial court's judgment is given retroactive effect to the day of the original trial court judgment. *See Gotten v. Gotten*, 748 S.W.2d 430, 431 (Tenn. Ct. App. 1987). When factual determinations are necessary to calculate a judgment on remand, the effective date of the judgment is the date of the original judgment. *See American Bldgs. Co. v. D.B.H. Attachments, Inc.*, 676 S.W.2d 558 (Tenn. Ct. App. 1984) (this Court affirmed the liability of the Defendant and remanded the case solely for the determination of damages). In *Kinard v. Kinard*, M2000-00674-COA-R3-CV, 2002 WL 970421, at *3-4 (Tenn. Ct. App. May 10, 2002) *(no perm. app. filed)*, the middle section of this Court in an opinion, authored by Judge Cottrell, presented a thorough discussion of the application of post-judgment interest as follows:

> A party's right to post-judgment interest is based on its entitlement to the use of proceeds of a judgment. *West Am. Ins. Co. v. Montgomery*, 861 S.W.2d 230, 232 (Tenn. 1993); *Vooys v. Turner*, 49 S.W.3d 318, 322 (Tenn. Ct. App. 2001). The purpose of post-judgment interest is to compensate a successful plaintiff for being deprived of the compensation for its loss between the time of the entry of the judgment awarding the compensation until the payment of the judgment by the defendants. *Vooys*, 49 S.W.3d at 322; *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990). Accordingly, a party who enjoys the use of funds that should have been paid over to another party should pay interest on the retained funds. *Lucius v. City of Memphis*, 925 S.W.2d 522, 526 (Tenn. 1996); *Stinnett v. Stinnett*, No. E2000-00121-COA-R3-CV, 2000 Tenn. App. LEXIS 606, at *11 (Tenn Ct. App. Sept. 7, 2000) (no Tenn. R. App. P. 11 application filed).

The right to post-judgment interest is statutory. *Owens v. State*, 710 S.W.2d 518, 518-19 (Tenn. 1986); *Tallent v. Cates*, 45 S.W.3d 556, 563 (Tenn. Ct. App. 2000); *Bedwell v. Bedwell*, 774 S.W.2d 953, 956 (Tenn. Ct. App. 1989). Tenn. Code Ann. § 47-14-122 provides that interest "shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial." This statute is mandatory and trial courts are not free to ignore it. *Vooys v. Turner*, 49 S.W.3d at 322; *Inman v. Inman*, 840 S.W.2d at 932; *Bedwell v. Bedwell*, 774 S.W.2d at 956. The failure of a trial court's judgment or decree to specify post-judgment interests does not abrogate the obligation imposed by the statute. *Tallent v. Cates*, 45 S.W.3d at 563.

The effect on post-judgment interest of an appellate court decision is governed, in the first instance by Tenn. R. App. P. 41:

> If a judgment for money in a civil case is affirmed or the appeal is dismissed, whatever interest is allowed by law shall be payable computed from the date of the verdict of the jury or the equivalent determination by the court in a non-jury case, which date shall be set forth in the judgment entered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the mandate shall contain instructions with respect to allowance of interest.

In the first appeal, this court modified the trial court's judgment in several respects, the relevant change awarding Ms. Kinard an additional $47,933.50, but the appellate opinion did not give any instructions regarding post-judgment interest on this additional award. Mr. Kinard argues that Rule 41 gave this court discretion to order that the post-judgment interest run from a date other than the date of the trial court's judgment. That argument is supported by our holding in *Inman v. Inman*, 840 S.W.2d 927 (Tenn. Ct. App. 1992), wherein we interpreted Tenn. R. App. P. 41 to "mean that if the appellate court deems that its action requires that interest be computed other than as required by statute, the judgment of the appellate court should so state." *Id.* at 932. However, we exercised no such discretion at that time.

Mr. Kinard also argues that this court's silence as to when post-judgment interest began gave the trial court discretion to make that determination. However, this court has determined otherwise and has held that absent appellate court orders directing differently, the statutory interest from the date of the trial court judgment will apply. *Inman*, 840 S.W.2d at 932.

In the present case, this Court's prior opinion did not give any instructions regarding post-judgment interest on remand. Based on the authorities cited above, we conclude that the trial court

was correct in determining that the Plaintiff was entitled to post-judgment interest from the date of the trial court's original judgment.

We decline the Appellees' request to determine this appeal to be frivolous. The judgment of the trial court is affirmed. The costs of this appeal are taxed to the Appellants, Shelton McGhee, Jr. and Sandra T. McGhee and their surety, for which execution may issue, and this cause is remanded to the trial court for any further proceedings which may be necessary.

_____
DAVID R. FARMER, JUDGE