IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 4, 2009 Session

# JOSEPH M. HASKINS, INDIVIDUALLY AND AS THE EXECUTOR OF THE ESTATE OF DREW E. HASKINS, JR., DECEASED v. DREW E. HASKINS, III

**Appeal from the Chancery Court for Hamilton County**
**No. 00-0292   Howell N. Peoples, Chancellor**

_____

**No. E2009-00403-COA-R3-CV  - FILED MAY 13, 2010**

_____

This case in on appeal for the second time after remand for determination of the defendant's request for attorney's fees, costs, and expenses. The defendant challenges the sufficiency of the trial court's award.   After reviewing the record, we reverse in part and affirm in part the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed in Part and Affirmed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

John P. Konvalinka, Chattanooga, Tennessee, for the Appellant, Drew. E. Haskins, III.

R. Wayne Peters and Robin L. Miller, Chattanooga, Tennessee, for the Appellee, Joseph M. Haskins, Individually and as Executor of the Estate of Drew E. Haskins, Jr.

**OPINION**

I.  BACKGROUND

This matter returns to this court following a remand to the trial court.  While the present appeal relates only to attorney's fees, costs, and expenses ("fees"), the following summary from our initial opinion provides background regarding the underlying litigation:

In 1983, Drew E. Haskins, Jr., and his two sons, the appellant, Drew E. Haskins, III [("D.E.H.")], and the appellee, Joseph M. Haskins [("J.M.H.")], formed a partnership designated Dayton Pike Plaza Associates ("the Plaza partnership") to lease property in Tennessee. Later, in 1986, the three formed a second partnership designated the Capital Developers Partnership ("Capital Developers") for the purpose of leasing a building in Catoosa County, Georgia, to Capital Bank. Each of the partners held an equal one-third interest in both partnerships. [D.E.H.] was elected and designated managing partner of Capital Developers.

In April of 1996, Drew E. Haskins, Jr., died, and on April 18, 1996, [J.M.H.] was appointed executor of the Estate of Drew E. Haskins, Jr. ("the Estate"). The Capital Developers' partnership agreement provided as follows in the event of a partner's death:

> The Partnership shall not be dissolved by the death of a [P]artner. The remaining Partners shall have the right to continue the Partnership business under its present name following the death of a Partner, provided they elect to purchase the interest of the deceased Partner and make payments specified in Paragraphs 20 and 21. The election to purchase the interest of a deceased Partner shall be exercised by written notice delivered within three (3) months after the effective date of the appointment of a personal representative on behalf of a deceased Partner. The notice may be delivered in person or may be mailed by registered or certified mail to the personal representative of the deceased Partner. . . .

It is undisputed that, although the surviving partners did not elect to purchase the interest of Drew E. Haskins, Jr. after his death, they treated both partnerships as ongoing after that time.

In March of 2000, [J.M.H.], individually and as executor of the Estate, filed a complaint in the Hamilton County Chancery Court against his brother [D.E.H.], alleging that the latter had breached his fiduciary duties by paying himself unreasonable management fees from Capital Developers and from the Plaza partnership. The complaint sought an accounting with regard to both partnerships, requested that [D.E.H.] be required to account for management fees, demanded the expulsion of [D.E.H.] from Capital Developers, and requested that the Court dissolve the Plaza partnership.

-2-

In his answer and counterclaim to the complaint, [D.E.H.] denied that any of the management fees he received were unreasonable or improper, denied all allegations of wrongful conduct, and denied the necessity of a judicial dissolution. The counterclaim contained three counts. Count one noted that because no partner elected to purchase the shares of Drew E. Haskins, Jr., as required under the Capital Developers' partnership agreement, that partnership should have ended three months after [J.M.H.'s] appointment as personal representative of the Estate. Count one further asserted that because [J.M.H.] failed to elect to purchase the shares of his father, that [J.M.H.,] as holder of one-third of the interest in Capital Developers Partnership, did not maintain the necessary two-thirds interest to expel [D.E.H.]; and that [J.M.H.] breached his fiduciary duty by attempting to expel [D.E.H.] from Capital Developers. Finally, count one requested the court to dissolve Capital Developers and to determine the rights and interests of the parties in the assets of that entity. Count two of the counterclaim asserted that the payment of management fees for Capital Developers and the Plaza partnership was expressly recognized by the partners, that such fees were at or below fair market value for such services, and that [J.M.H.] should not be allowed to unjustly benefit by avoiding the payment of reasonable management fees. Count three of the counterclaim asserted that, pursuant to the partnership agreements, [D.E.H.] was entitled to indemnification and reimbursement for all costs, expenses, and fees, including attorney's fees, related to the litigation.

In August of 2000, [J.M.H.] elected himself manager of Capital Developers, believing that he carried a two-thirds vote based upon his own one-third share, plus a one-third share he claimed as executor of his father's estate. Contrary to the partnership agreement, there was no notification of a meeting of partners as to this action of [J.M.H.], and no such meeting was held.

The case was tried without a jury in November of 2002. Upon finding that the surviving partners did not elect to purchase the interest of the Estate, the trial court ruled: 1) Capital Developers was dissolved as a matter of law as of July 18, 1996, three months after the date [J.M.H.] was appointed personal representative of the Estate [due to the fact that no election was made by the remaining partners to purchase the interest of the Estate in the partnership, pursuant to the partnership agreement]; 2) there was to be an accounting and payout of appropriate partnership properties in proportions allowed under the partnership agreement as of July 18, 1996; 3) the management fees received

by [D.E.H.] were reasonable and equitable;[1] 4) that the Plaza partnership be dissolved effective November 6, 2002; 5) that the parties prepare and exchange accountings for the partnerships on or before January 6, 2003; 6) and the request of [D.E.H.] for attorney's fees be denied. After entry of this order, the trial court entered an additional order referring the case to the clerk and master for a determination as to the manner in which the two partnerships should be sold and as to the appropriate distribution of the net proceeds from the sale of Capital Developers. The trial court further directed that [D.E.H.], [J.M.H.], and the Estate should each receive one-third of the net sale proceeds of the Plaza partnership.

Pursuant to a ruling of the clerk and master, the partnership properties were sold at private auction on July 8, 2003, and [D.E.H.] was the successful bidder as to both partnerships. Although closing was scheduled for September 24, 2003, prior to that date, [J.M.H.] filed a motion to set aside the sale based in part upon allegations that [D.E.H.] had failed to close the sale within a reasonable period of time. This motion was granted by order of the clerk and master; however, the clerk and master's order was reversed by order of the trial court which decreed that closing take place within thirty days of the date the latter order became final. [D.E.H.]'s request for attorney's fees incurred opposing the motion to void the sale was denied.

*Haskins v. Haskins*, No. E2005-02868-COA-R3-CV, 2006 WL 3017896, at *1-3 (Tenn. Ct. App. E.S., Oct. 24, 2006).

In our prior opinion, we reversed the trial court's ruling denying D.E.H. reimbursement of fees. *Id.*, 2006 WL 3017896, at *13-15. This court reasoned:

While we do not agree that the trial court erred in denying [D.E.H.] attorney's fees, expenses, and costs requested in connection with his purchase of the partnership and successful opposition to the attempt to void the sale, we do believe he was entitled to such fees, expenses, and costs incurred with respect to the other matters listed because they were incurred in connection with partnership business while he was acting as managing partner.

* * *

---

[1]D.E.H. had the partnerships pay management fees to his company, Battleview Management.

-4-

The indemnification clause of the Capital Developers' partnership agreement relied upon by [D.E.H.] in support of his request for attorney's fees states in pertinent part as follows:

> The partnership shall indemnify and hold the Managing Partner harmless from and against any claim, demand or liability incurred by him in connection with the business of the Partnership, provided that the acts or omissions from which the claim, demand, or liability arose were performed or committed in the good faith belief that the Managing Partner was acting within the scope of his authority and in the best interest of the Partnership and that he was not grossly negligent or guilty of intentional misconduct.

*Id.* at *14. We noted further that the Plaza partnership agreement provides that "[t]he Partners shall be reimbursed by the Partnership for all reasonable out-of-pocket expenses incurred by the Partners in connection with the conduct of the affairs of the Partnership." *Id.* Therefore, this court found and held as follows:

> [T]he expenses and fees incurred by [D.E.H.] in defense of his payment of management fees to himself, against the attempt to expel him and in his efforts to recover on behalf of the partnership management fees that [J.M.H.] wrongfully received did constitute liabilities incurred by [D.E.H.] in connection with the business of the partnership while acting within the scope of his authority as managing partner. Therefore, we agree that the partnership agreement requires that [D.E.H.] be awarded attorney's fees, costs, and expenses incurred by him in regard to these latter matters, and it is our determination that the trial court's denial of such was error.

*Id.* at *15.

After this court handed down its decision in the first appeal, D.E.H. filed a motion for fees with the trial court. The total amount of fees and interest sought through April 30, 2007, was $123,100.58, with interest accruing at $27.48 per day thereafter. D.E.H. summarized his request as follows:

> 1. $100,333.86 consisting of charges for services and expenses as allowed by the Court of Appeals.

2. $46,080.16 for the fees and charges through December 30, 2002, the date of the trial court's original judgment order. Interest at ten percent on those charges from December 30, 2002, through April 30, 2007, is $19,972.28 and $12.62 per day thereafter.

3. $54,253.70 in fees and charges incurred from December 31, 2002, through October 24, 2006, when the Court of Appeals rendered its decision. Interest at ten percent from October 24, 2006, through April 30, 2007, is $2,794.44 and $14.86 per day thereafter.

Subsequently, D.E.H. moved to supplement his motion for fees, requesting an additional amount of $13,621.35 from September 19, 2006, through February 29, 2008. At an April 1, 2008 hearing, D.E.H.'s attorney Mathew D. Brownfield testified regarding the claimed fees.

In an order dated July 2, 2008, the trial court refused to grant an award of fees in the amount requested. The court noted as follows:

For the most part, the entries provide only general descriptions of the services performed. Mr. Brownfield testified that the billings totaled approximately $148,000 for all matters, and that $100,333.86 was the amount he had determined that was billed for the services relating to the three issues allowed by the Court of Appeals. Mr. Brownfield was cross-examined concerning the absence of detail in the breakdown of the time statements[.] On cross examination, it appeared that the $100,333.86 includes services relative to the sale of assets by the Clerk & Master, the accountings by the parties, the appraisal of property, a counter-claim for dissolution of the Capital Developers partnership, tax issues for defendant, issues relating to leases and the negotiation of leases, and generally relating to all issues in the appeal of the case. . . .

* * *

. . . The Court understands that when the services were being rendered, counsel did not specifically break down the periodic billings by specific issue of the case. The Court of Appeals has determined, however, that defendant may be reimbursed only for fees and expenses relating to the three issues. The Court has considered denying the motion for fees for lack of proof. That would be unduly harsh because it is apparent that counsel for defendant has made some effort to comply with the remand by the Court of Appeals. It is also apparent that counsel have given their client the benefit of the doubt in

-6-

preparing the time summary for the fees claimed. The Court finds that counsel for defendant should be allowed to file a Second Motion for Fees and Expenses and make a second attempt to prove the fees and expenses related solely to the three issues. . . . [D]efendant should claim only those fees that unquestionably are related to the three issues, not fees that arguably could be allowed.

* * *

Thereafter, D.E.H. submitted a second motion for fees and requested $39,589.16 in fees through November 24, 2008, with interest through that date of $18,980.95, for a total of $58,570.11, with interest accruing at $10.84 per day thereafter. D.E.H. summarized the fees as follows:

a.  $28,812.67 in attorney's fees that were incurred through December 30, 2002, when the  trial court ruled that no fees would be awarded, with interest at ten percent from December 30, 2002 through November 24, 2008, equaling $16,766.61 with $7.89 per day thereafter.

b.  It was determined that the fees and charges incurred from December 31, 2002, through October 24, 2006, when this Court rendered its decision, were $10,776.49.  Interest at ten percent through the date of filing, November 24, 2008, was $2,214.35, and $2.95 per day thereafter.

c.  The total amount claimed was $39,589.16 for fees and $18,980.95 for interest though November 24, 2008, with interest at $10.84 per day thereafter.

D.E.H. specifically noted that "[t]he difference of $106,372.92 has been omitted from the Revised Affidavit A, as not within the scope of the award of the Court of Appeals per this Court's Memorandum and Order of July 2, 2008.  Further, unlike the prior request, no fees are requested for preparation of either application for fees."

On January 29, 2009, the trial court ruled that $39,589.16 in fees would be awarded to D.E.H.  The court provided as follows:

Counsel for [J.M.H.] correctly points out that the partnership agreements provided that reimbursement is due from the partnerships.  Since the legal issues were essentially the same for the two partnerships, the court finds that each of the two partnerships should bear one-half of the burden of

-7-

reimbursement. Thus, each partnership would be liable for $19,794.58. Capital Developers partnership was wound up with each partner receiving one-half of the assets; therefore, [J.M.H.] is liable to [D.E.H.] in the amount of [$]9,897.29 for the obligation of Capital Developers. Plaza Developers partnership was owned two-thirds by [J.M.H.]; therefore, [J.M.H.] is liable to [D.E.H.] in the amount of $13,196.39 for the obligation of Plaza Developers.

The trial court further ruled that no interest would be awarded "because the amount has been at issue and contested until the entry of this Order, the counter-[claim] did not request pre-judgment interest, and the proof with regard to the relationship between the amount requested and the three issues is not certain." Accordingly, the court awarded D.E.H. a judgment against J.M.H. in the amount of $23,093.68 in reimbursement of fees. Thereafter, D.E.H. timely filed a notice of appeal.

## II. ISSUES

D.E.H. raises the following issues on appeal:

A. Whether the trial court applied the wrong standard when it failed to award the amount of attorney's fees, costs, and expenses requested by D.E.H.

B. Whether the trial court erred in allocating the payment of attorney's fees, costs, and expenses awarded.

C. Whether the trial court erred in not awarding interest on the awarded attorney's fees, costs, and expenses.

J.M.H. raises the following related issue:

D. Whether the trial court erred in awarding attorney's fees, costs, and expenses that were not related to the three issues identified by this court's previous opinion.

## III. STANDARD OF REVIEW

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings

unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are accorded no presumption of correctness.

Determining the amount of the attorney's fee that is reasonable is within the trial court's discretion. *Albright v. Mercer,* 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996). Accordingly, the appellate court reviews a trial court's determination of the reasonable amount of fees to which a party is contractually entitled using the "abuse of discretion" standard. *J & B Invs., LLC v. Surti*, 258 S.W.3d 127, 138 n. 10 (Tenn. Ct. App. 2007).

The "abuse of discretion" standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). A trial court's discretionary decision will be upheld as long as reasonable minds can disagree about the correctness of the decision. *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court will be found to have "abused its discretion" only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice on the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

## IV. DISCUSSION

### A.

D.E.H. argues that the trial court used an improper standard in denying his first motion for fees. He contends that it was error for the trial court to direct him to claim only fees that "unquestionably are related to the three issues" identified by the Court of Appeals. D.E.H. asserts that the trial court should have awarded the amount of fees requested in the first motion, and that the existing award is inadequate in light of this court's previous opinion.

In response, J.M.H. contends that D.E.H. bore the burden of proving the reasonableness of the fees requested. *Wilson Mgmt. Co. v. Star Distribs., Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). J.M.H. asserts that D.E.H. failed to sustain his burden of proof because the descriptions and testimony regarding the fees showed no breakdown of how much time was spent on each particular issue. He claims that D.E.H. arbitrarily reduced the fees claimed on many entries. He contends that there was no way for the trial court to discern the time spent on the covered issues versus the time spent on the non-covered issues. J.M.H. further argues that D.E.H.'s request for fees was replete with claims in areas for which this court did not allow reimbursement.

Tennessee law requires that attorney's fees be a question of reasonableness. D.E.H. notes that the burden of proof to make out a claim for fees is ordinarily met by an affidavit from the attorney performing the work. *Chaffin v. Ellis*, 211 S.W.3d 264, 291 (Tenn. Ct. App. 2006); *Hosier v. Crye-Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. M.S., July 17, 2001). The amount of the award is to be determined upon all the facts and circumstances presented by the record, "primarily the amount involved and available, the nature of the responsibility assumed by the attorneys, and the character and extend of the services which they have performed, not only in the technical litigation itself, but also in matters arising out of and incidental to such litigation. *United Med. Corp. of Tennessee, Inc. v. Hohenwald Bank & Trust*, 703 S.W.2d 133, 136 (Tenn. 1986).

Reasonableness determinations also should be guided by the factors in the Rules of Professional Conduct 1.5(a):

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the legal services;

(8) Whether the fee is fixed or contingent;

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5.

At the start of the hearing on fees, counsel for D.E.H. inquired as to whether the trial court desired testimony in light of the fact that an affidavit had been filed. The trial court replied that

> [t]he response to the motion for fees states that there are numerous issues concerning claimed fees that were not awarded by the ruling of the Court of Appeals. Sets out certain areas that apparently claimed that the plaintiff here claims were not included in the award by the Court of Appeals.
>
> The Court of Appeals, as I understand the opinion, said that [D.E.H.] is entitled to be reimbursed by the partnership for expenses and fees that were paid for specifically the defense of his – of the payment of management fees to [D.E.H.] for the defense of the attempt to expel him that was prosecuted by [J.M.H.] and for the efforts to recover for the benefit of the partnership the management fees that were wrongfully received by [J.M.H.].
>
> In reviewing the time statement, it is not clear that the fees that are listed are for these specific three areas. They merely set out things such as reviewing message Dr. Haskins. What does that tell the Court about whether it was related to one of these three areas? So I think we need more than the affidavit.

Mr. Brownfield then testified that approximately $148,000 was billed from April 2000 to September 2006. He stated that the amount of fees "sought in connection with the same period of time with regard to the allocation done by the Court of Appeals" was $100,333.86. He indicated that he "went through the billing statements . . . [and] pulled out the time entries that were covered by the Court of Appeals opinion[.]"

On cross-examination, Mr. Brownfield testified that the time entries were kept on a daily basis. He stated that edits were made on prebills to correct any errors before the bill was sent to the client. Further, he noted that the time descriptions were consistently entered accurately.

After a thorough review of the record, we conclude that the trial court construed our prior opinion too narrowly. There were only two areas for which fees were not awarded: regarding D.E.H.'s purchase of the partnerships, and his successful opposition to J.M.H.'s attempt to void that sale. In our view, D.E.H., in his original fee request, properly requested recovery of fees in areas allowed by this court in our previous opinion. In applying the factors enumerated in Rule 1.5 of the Rules of Professional Conduct, it is apparent that the time, labor, difficulty of the issues, and results obtained all weigh in favor of the

reasonableness of the fees claimed in the first motion.

In our review, we determined that J.M.H.'s challenges to the specific time entries were appropriately rebutted. Accordingly, for the reasons noted above, J.M.H.'s issue that the trial court erred in awarding fees outside the three areas identified in our prior opinion likewise lacks merit.

B.

D.E.H. also challenges the trial court's apportionment of the fees between J.M.H. and D.E.H. He contends that this court did not hold that D.E.H. should receive a pro-rated portion of fees, but that he was to recover the fees incurred "in defense of his payment of management fees to himself, against the attempt to expel him, and in his efforts to recover on behalf of the partnership the management fees that [J.M.H.] wrongfully received." *Haskins*, 2006 WL 3017896, at *13-15. D.E.H. contends that the trial court's reduction of the entire amount of fees was erroneous. In response, J.M.H. argues that the trial court was bound by the partnership agreement when apportioning the fees. He contends that reimbursement of fees was correctly paid in accordance with the ownership interests that D.E.H. had in the now-dissolved Capital Developers and Plaza partnership.

We note that neither of the partnerships at issue were made parties to this litigation. Our prior opinion held that "Drew E. Haskins III be awarded attorney's fees, costs, and expenses incurred by him." We did not order apportionment of the awarded fees pursuant to the percentage of ownership interest in the two partnerships. Accordingly, we reverse the trial court's holding on this issue.

C.

D.E.H. contends that he is entitled to post-judgment interest from December 30, 2002, which is the date of the entry of the order that found Capital Developers dissolved as of July 18, 1996, and Plaza partnership dissolved as of November 6, 2002. He argues that an appellate court decision that modifies or reverses a trial court's judgment is given retroactive effect to the date of the original judgment. *See Varnadoe v. McGhee*, 149 S.W.3d 644, 649 (Tenn. Ct. App. 2004); *Gotten v. Gotten*, 748 S.W.2d 430, 431 (Tenn. Ct. App. 1987). Because this court later ruled that the trial court should have awarded fees, D.E.H. contends that the amount of fees through that date should have interest applied to make him whole.

D.E.H. also relies upon Tenn. Code Ann. § 47-14-122, which provides:

> Interest shall be computed on every judgment from the date on which the jury or the court, sitting without a jury, returns a verdict without regard to a motion for new trial.

He asserts that the right to post-judgment interest is statutory and thus mandatory. *Varnadoe*, 149 S.W.3d at 650.

In response, J.M.H. points out that the trial court denied post-judgment interest because the amount of fees was contested until the entry of the trial court's order on January 29, 2009. He contends that post-judgment interest does not begin to accrue until "the party awarded judgment becomes entitled to the money." *Clement v. Clement*, No. W2006-00691-COA-R3-CV, 2007 WL 2318659 (Tenn. Ct. App. W.S., Aug. 15, 2007). In *Clement*, the court explained when interest begins to accrue on a judgment:

> It is well-settled that the post-judgment interest statute is mandatory, and that trial courts cannot ignore it. However, "[a] party's right to postjudgment interest is based on that party's entitlement to use the proceeds of the judgment after the award."
>
> In the instant case, as noted above, the award to Ms. Clement was not a sum-certain money judgment from which statutory interest would ordinarily accrue, and Ms. Clement did not have a right to the use of the proceeds representing her interest in the property until either the trial court determined a proper method of payment or the property was sold. Accordingly, we find no merit in this argument. The trial court's decision on this issue is affirmed.

*Clement*, at *4 (internal citations omitted). In the instant case, J.M.H. contends that this court remanded this case to the trial court for the collection of fees, and the amount was not sum-certain until the trial court entered its order on January 29, 2009. J.M.H. paid the judgment in full on February 2, 2009.

> The *Gotten* court noted as follows:
>
> The appellate court acts only upon the record in the case in the trial court and when the appellate court enters an order modifying the trial court order it is doing what should have been done in the first instance. The modification of the trial court order should be effective as of the date of the trial court order. Therefore, we hold that a judgment of the appellate court reversing or modifying the trial court judgment . . . is effective as of the date of the trial court judgment, unless the appellate court judgment specifies otherwise.

748 S.W.2d at 432.

In *Bunch v. Bunch*, No. 03A01-9805-GS-00156, 1999 WL 172674 (Tenn. Ct. App. E.S., Mar. 24, 1999), this court, speaking through Judge Susano, distinguished cases in which "the appellate court modified the lower court's judgment, i.e., changed specific monetary awards therein." *Id.* at *4. In that case, we required the trial court to take further action on remand – "not merely to enter judgment in accordance with specific modifications by us." *Id.* Because we could not act upon the record and modify the trial court's judgment, we stated that "a final determination regarding the division of property occurred only upon remand of the case and the trial court's subsequent judgment." *Id. See also Berryhill v. Rhodes*, No. W2001-00748-COA-R3-JV, 2002 WL 927442, at *4 (Tenn. Ct. App. W.S., May 2, 2002).

We believe that the case before us is analogous to the decision in *Bunch*. This court remanded this matter in order for the trial court to determine the amount of fees to which D.E.H. is entitled. We did not know what effect our opinion would have on the pecuniary amount the trial court would determine upon remand. The trial court had to determine, after considering additional evidence and argument from the parties, the correct amount of fees. *See Berryhill*, 2002 WL 927442, at *4.

Under the facts of this case, a final determination regarding the fees occurred only after this court's remand of the case and the trial court's subsequent judgment. As in *Bunch*, this case "presents a different situation from one in which the lower court's judgment is modified to reflect the appellate court's revised specific monetary determination." 1999 WL 172674, at *4. The date the trial court "returned the verdict" pursuant to Tenn. Code Ann. § 47-14-122 was January 29, 2009. Therefore, the trial court did not err in finding that interest does not accrue from the date of the trial court's original judgment.

## V.  CONCLUSION

The judgment of the trial court is reversed in part and affirmed in part. D.E.H. is awarded the fees of $100,333.86 effective as of January 29, 2009, with post-judgment interest accruing from and after that date, without apportionment. Costs of the appeal are assessed to the parties equally.

_____
JOHN W. McCLARTY, JUDGE

-14-