IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE


**MARCIA SUSAN TALLENT   v.   KENNETH ALLEN CATES**


**Direct Appeal from the Juvenile Court for Knox County**
**No. H-9542      CAREY E. GARRETT, JUDGE**

---

**No. E1999-01168-COA-R3-CV - Decided June 27, 2000**

---


Mother and Father have one child, born June 26, 1978.  They never married.  Mother filed this URESA Petition to establish paternity and set child support on May 15, 1997, after the child had reached majority. The Juvenile Court ordered Father to pay $35,351 in retroactive child support, to be apportioned between the Mother, the child, and the Tennessee Department of Children's Services. In this appeal, Mother says the award is a downward deviation from the Child Support Guidelines in three respects, and she appeals on that basis, as well as on the Trial Court's method of computation of the amount due and the manner of payment ordered.  She also argues that the Trial Court failed to award her post-judgment interest as provided in T.C.A. § 47-14-121.  We affirm the Trial Court's Judgment as to the amount of retroactive child support due and remand the case to the Trial Court for the award of post-judgment interest and modification of the payment plan to address the addition of post-judgment interest and achieve payment of this judgment within a reasonable period of time.

**T.R.A.P. Rule 3; Judgment of the Trial Court Affirmed in Part, Modified in Part, and Remanded.**


SWINEY, J., delivered the opinion of the court, in which GODDARD, P.J., and SUSANO, J., joined.

Christopher J. Oldham, Knoxville, for Appellant, Marcia Susan Tallent.

William A. Mynatt, Jr., Knoxville, for Appellee, Kenneth Allen Cates.

# OPINION

## Background

Marcia Susan Tallent ("Mother") filed two Petitions seeking a determination of paternity and payment of child support during the minority of her child. She says Kenneth Allen Cates ("Father") was not served with the Petitions because she could not find him. Mother filed this third Petition, styled "Petition for Paternity," under the Uniform Reciprocal Support Enforcement Act ("URESA"), on May 15, 1997. Mother and the child reside in Knox County. Father is a resident of Stanley, North Carolina. By the time this Petition was filed, the child had reached majority, and Mother sought retroactive child support as well as a declaration of paternity.

The case was first heard by a Knox County Juvenile Court Referee on September 15, 1997. By that time, Father's paternity had been established by DNA testing, and at that hearing, the parties stipulated paternity. The child having reached majority, the issues of custody, visitation and current child support were moot. The only issues before the Referee were whether retroactive child support should be awarded, and if so, how much and to whom, and how any retroactive support should be paid. The proof showed that Father made no contributions to the financial support of the child during the child's minority and that Mother received Aid to Families with Dependent Children ("AFDC") for thirty months during that time, with a total of $4,137 in AFDC payments having been made. Mother submitted affidavits reflecting her reconstruction of her household monthly expenses from the child's birth until emancipation. We have no transcript of the hearing and no statement of the evidence, but the record before us does contain the Juvenile Court Referee's detailed findings of fact indicating, among other things, that the child testified that her living expenses were borne by her maternal grandparents during some of her minority and that the rent Mother claimed she owed to those grandparents "was not actually paid." These facts are uncontested on appeal.

The Referee's factual determination of Father's income during the child's minority is contested. The evidence before the Referee as reflected in the Referee's findings of fact was that Father earned $2.65 per hour at the time of the child's birth in 1978 and continued to work for minimum wage until 1982, when he went to work for Piedmont Corporation for $6.25 per hour. The Referee also had evidence that Father was employed by U.S. Air at $10.25 per hour by 1989 and that he earned $25.00 per hour at the time of the hearing. On April 25, 1985, Father's second child was born, and that child has remained in Father's physical custody since birth.

With that evidence, the Referee made a detailed and comprehensive annual calculation for each of the 18 years of the child's minority, including the Mother's monthly income and expenses, the Father's monthly income, and the amount of child support dictated by the Child Support Guidelines. The Referee included in that calculation the amount Mother received from AFDC and amounts known to have been contributed or paid by the maternal grandparents. The Referee then found:

> Fairness requires some consideration of the father's second child,
> chronologically, who was his first child legally. After all, the

-2-

guidelines presume the custodian provides the same percentage of income for support as that percentage provided by the non-custodian. Guidelines 1240-2-4-.03(2). Equity requires deviation from the guidelines to allow the father here the same presumption, that he expended 21% of his net income to support the child in his household. Thus, the computation of support is according to this formula: monthly net - guidelines support for child in household = adjusted net; adjusted net x 21% = support for child here. This formula results in a deviation from the guidelines sum of $191.00 per month to the amount of $149.50 per month for the period May 1984 through 1988.

Next, the Referee applied this Court's instruction in *State ex rel Grant v. Prograis,* 979 S.W.2d 594 (Tenn. Ct. App. 1997), which discusses the method of calculation in cases such as this:

> . . .where the income of the non-supporting parent was sufficient to provide a higher standard of living than the supporting parent was able to provide. In this situation, it would be unjust to limit the duties of the non-supporting parent to the ability of the supporting parent. It would also be unjust to reimburse the supporting parent for that which was not furnished.
>
> Under these special circumstances . . . part of the retroactive support should be awarded to the mother to reimburse her for the support supplied by her in excess of her apportioned duty. If, because the mother was unable to support the child according to the income of the father, the child was deprived of the standard or level to which she was entitled, then the child doubtless suffered a deprivation of lasting effect for which the child should receive compensation.
>
> If, upon remand, the court finds the situation to be as above suggested, then the award of retroactive support should be divided. First the wife should be reimbursed for the cost of furnishing more support than she had a duty to support. The remainder of the retroactive support should be awarded to the child for whose benefit the proceeding initiated.

*State ex rel. Grant v. Prograis,* 979 S.W.2d 594, 601 (Tenn. Ct. App. 1997). Based on that holding, the Referee found that after 1988, Father's income was substantially higher than Mother's, and therefore his obligation to support the child was greater than Mother's. However, Mother was not entitled to reimbursement for support she did not actually provide. The Referee determined that, under *Grant v. Prograis, supra,* "the difference between the father's annual child support and the sum owed the mother is the amount the child is entitled to."

From all of this, the Referee determined that the total retroactive support obligation of the Father was $35,351. Of that total, the Mother was awarded $27,234; the child was awarded $3,980; and the State of Tennessee was awarded $4,137 to reimburse the AFDC payments. The Referee ordered Father to pay the arrearage at the rate of $300 per month, with Mother receiving $200, the child $50 and the State of Tennessee $50 monthly.

On April 9, 1999, upon Petition of the Mother, the Referee ordered "a re-hearing de novo before the Judge of the Juvenile Court." The record indicates that Father obtained counsel and filed a Notice of Appearance in the Juvenile Court on April 21, 1999. Mother's counsel was permitted to withdraw from representation on June 15, 1999, as "Ethically Mandated by Client's Request." Mother then appeared before the Juvenile Court Judge *pro se* and Father appeared by counsel on August 16, 1999, for a hearing on Mother's appeal of the Referee's Order. The Juvenile Court Judge found that the Juvenile Court Referee had determined the appropriate amount of retrospective child support and was acting within the Court's discretion in setting the amount. Accordingly, the Juvenile Court confirmed the Findings and Recommendations of the Referee by Order of October 6, 1999. Mother then obtained new counsel and filed a Notice of Appeal to this Court on October 14, 1999.

## Discussion

In this appeal, Mother raises the following issues, which we quote:

I. Did the Trial Court commit legal error by deviating downward from the mandatory support guidelines in favor of the Respondent?

II. Did the Trial Court commit legal error by failing to base the award of retroactive child support on the actual wages of the Respondent?

III. Did the Trial Court abuse its discretion by allowing the Respondent to pay the judgment for back child support by installment payments spread out over a ten-year period?

IV. Did the Trial [Court] abuse its discretion by failing to assess post-judgment interest against the Respondent as provided in T.C.A. § 47-14-121?

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Davis v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). Juvenile Courts have broad discretion to determine the amount of retroactive child support awards as well as the manner in which they are to be paid. *State ex rel. Coleman v. Clay,* 805 S.W.2d 752, 755 (Tenn. 1991). Accordingly, our standard of review is whether the Trial Court abused its discretion. *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn. 1999).

-4-

Mother first argues that the Trial Court erred "by deviating downward from the mandatory support guidelines in favor of the Respondent." She contends that the Trial Court "arbitrarily decided that the Tennessee Department of Human Services Child Support Guidelines ("Guidelines") were only applicable to setting current child support, and not to be applied to retroactive support." She cites the language of the Guidelines, which states:

> . . . there must be a rebuttable presumption in all child support cases that the amount of child support determined by an application of these guidelines is the correct amount to be awarded. . . and this rebuttable presumption must be applied to all child support awards even if the order is being sought for a retroactive period before October 13, 1989.

Our Supreme Court recently held:

> The legislature has provided for retroactive awards by statute and by the incorporation of the Child Support Guidelines promulgated by the Tennessee Department of Human Services, Child Support Services Division. Retroactive child support is available whether the child is a minor or whether the child has reached the age of majority and brings the claim within [the] time permitted by the statute. Tenn. Code Ann. § 36-2-103(b)(1)(repealed in 1997, corresponding section at Tenn. Code Ann. § 36-2-306). Furthermore, courts are required to apply the Child Support Guidelines as a rebuttable presumption in determining support, and the 1994 guidelines explicitly provide 'that the rebuttable presumption must be applied to all child support awards *even if the order is being sought for a retroactive period before October 13, 1989.*' [Emphasis in original.]

*Berryhill v. Rhodes*, ____S.W. 3d____ (Tenn. 2000)

Due to the 1994 statutory revisions, the court's discretion in setting the amount of retroactive child support is limited. "While the juvenile court continues to have discretion in making awards of child support, that discretion must be exercised within the strictures of the Child Support Guidelines." *Berryhill, supra.*

The Juvenile Court Referee in this case did apply the Guidelines but afforded Father a downward deviation occasioned by a factual determination that Father had provided support for another child in his custody from May 1984 through 1988.[1] The Trial Court reduced Father's net

---

[1]While Mother argues that the Juvenile Court deviated downwardly in two other instances, we do not find these alleged "deviations" to be inconsistent with the Guidelines. They are merely the Juvenile Court's method of applying the particular facts to a determination of the child support

income for child support purposes for that period by 21%, and gave the following rationale in its Order:

> The guidelines are inadequate, to be charitable, because they do not specifically allow consideration for the father's child, in his custody, who is a pre-existing legal obligation to the support obligation established by this paternity order. Deviation from the guidelines sum is only permitted in cases of extreme financial hardship, if such a child has extraordinary medical expenses. Guidelines 1240-2-4-.04(4). This requirement may be justified in the context of setting current child support, but this limitation should not be applied to retroactive support. The reality is that the father has already spent sums daily over the years supporting the child in his custody. Fairness requires some consideration of the father's second child, chronologically, who was his first child legally. After all, the guidelines presume the custodian provides the same percentage of income for support as that percentage provided by the non-custodian. Guidelines 1240-2-4-.03(2). Equity requires deviation from the guidelines to allow the father here the same presumption, that he expended 21% of his net income to support the child in his household. Thus, the commutation of support is according to this formula: monthly net - guidelines support for child in household = adjusted net; adjusted net x 21% = support for child here. This formula results in a deviation from the guidelines sum of $191.00 per month to the amount of $149.50 per month for the period May 1984 through 1988.

This is not a situation in which the Guidelines may help to dissuade a parent from fathering more children he cannot afford to support by requiring that he support the first child in accordance with the Guidelines without consideration of later-born children. In this case, Father had no known prior child support obligation to this child when his second child was born. The Trial Court carefully considered the equities as between the parties and their actual economic situations for the 54-month period at issue in making this downward deviation. The reduction of $41.50 per month below the guidelines for 54 months amounts to a total of $2,241. We find the Trial Court exercised its discretion within the strictures of the Child Support Guidelines under these circumstances and provided a written finding as required by Tenn. Comp. R. and Regs. Ch. 1240-2-4-.01, -.02 and *Berryhill, supra.*

Next, Mother raises the issue that the Trial Court erred "by failing to base the award of retroactive child support on the actual wages of the Respondent." She argues that "[t]his Court

---

due in accordance with the Guidelines: (1) Mother's income and expenses differed substantially from Father's during one period; (2) AFDC paid some of the child's support.

does not have before it a sufficient information to determine of [sic-if] the trial court relied on the proper income of the Respondent in setting the child support." As stated, we have no transcript of the hearing before the Referee nor of the hearing before the Juvenile Court Judge. Neither do we have the benefit of a Statement of the Evidence. The scant (22-page) record before us does contain a copy of a handwritten document which appears to have been prepared by the Referee and which itemizes in great detail the monthly income and expenses of Mother, the monthly income of Father, and the presumptive monthly child support amounts for each year based on the Guidelines. The document also contains various notations such as years in which Mother claimed rent expense but did not actually pay rent to her parents, periods of time Mother and daughter lived with grandparents, specific expenses for school, and AFDC payments to Mother for support of the child. This is the only information before this Court concerning Father's income, and it appears to be comprehensive and credible. Rule 24(a), Tenn. R. App. P., requires that the record on appeal shall consist of, among other things, the trial transcript or a statement of the evidence of the Trial Court. Tenn. R. App. P. 24(d) does provide a procedure when no transcript or statement of the evidence is to be filed. However, in the absence of a transcript or statement of the evidence, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the Trial Court's factual findings. *Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992).

"In setting retroactive awards, the guidelines provide that the obligor's income for the last two years is presumed to be correct unless rebutted by either party. Tenn. Comp. R and Regs. Ch. 1240-2-4-.04(1)(c)." *Berryhill, supra.* Since the Trial Court deviated downward from the guidelines, the question before us is whether or not the evidence preponderates against the Trial Court's determination. The juvenile court referee made a detailed finding, based upon the evidence before him, as to the Father's income during the child's minority. There is nothing in the record before us that contradicts this factual determination rebutting the presumption that the Father's income for the last two years was the correct amount to be used.

In the absence of the transcript or statement of the evidence, we cannot find from the record before us that the preponderance of the evidence is contrary to the findings of fact of the Trial Court. We are bound by the record before us. The Supreme Court in *Berryhill* remanded that case to allow the parties to present additional evidence as to certain expense claims and the father's income. From the language of the *Berryhill* opinion, it appears that either a transcript or statement of the evidence was presented on appeal. The Supreme Court in *Berryhill* held that based upon the record before it, it was "unclear" whether or not ". . . the ten year average proposed by Ms. Berryhill would be appropriate." In the case before us, with no transcript or statement of the evidence presented, we must presume that the record would have contained sufficient evidence to support the Trial Court's factual findings concerning Father's income. Because of this presumption, the record before us is not "unclear" but instead supports the Trial Court's factual findings. We hold, based on the record, that the Trial Court did not err in awarding retroactive child support in the amount ordered.

Mother next argues that the Trial Court erred "by not assessing post-judgment interest." Father argues that Mother has waived any claim for post-judgment interest because she did not ask for such interest at trial. Interest on judgments in Tennessee is statutorily mandated, and

"shall be computed at the effective rate of ten percent per annum." T.C.A. § 47-14-121. The failure of any court to expressly provide such interest in its judgment does not abrogate the statute. *Inman v. Inman,* 840 S.W.2d 927, 932 (Tenn. Ct. App. 1992). The interest accrues from the date of the Trial Court's Judgment. *Inman v. Alexander,* 871 S.W.2d 153, 154 (Tenn. Ct. App. 1993). Accordingly, Mother is entitled to the statutorily mandated 10 percent interest per annum.

Finally, Mother complains that the Trial Court erred "by allowing the respondent to pay a judgment for back child support by installments over a ten-year period." The Juvenile Court Order provides:

> . . . father presently earns $25.00 per hour. It is found that he can repay the arrearage balance at the rate of $300.00 per month. . . . Repayment shall be at the rate of $300.00 per month, payable through the Court's registry, and beginning April 15, 1999. Of this sum, the mother shall receive $200.00 per month, the child $50.00 monthly and the State $50.00 monthly.

The amount of retroactive child support awarded to Mother is $27,234. Father's court ordered payments to Mother of $200 monthly, with post-judgment interest accruing at 10% annually, would not cover even the interest let alone pay down the judgment. We do not think that result is mandated by T.C.A. § 36-5-101(k), as argued by Father,[2] and we cannot countenance such a result. Accordingly, we remand this case to the Trial Court for entry of an Order which addresses the statutorily required post-judgment interest and prescribes a payment plan designed to pay this judgment within a reasonable period of time. For guidance, we direct that Court to our Supreme Court's holding in *State ex rel. Coleman v. Clay,* 805 S.W.2d at 755, which states:

> [ T.C.A. § § 36-2-102 and 36-2-108] give the juvenile court the discretion to order a retroactive support award . . . , the amount and method of payment to be determined by the juvenile judge in light of the circumstances of the case and consistent with the standards which normally govern the issuance of child support orders.

"The standards which normally govern the issuance of child support orders" are contained in the Guidelines, and the Guidelines direct:

> In cases where initial support is being set, a judgment must be entered to include an amount due for monthly support from the date of the child's birth or date of separation or date of abandonment, whichever is appropriate, until the current support order is entered. This amount

---

[2]T.C.A. § 36-5-101(k) applies in cases where an order of support is in effect and then terminates. In such cases, the arrearage is to be paid in the same monthly amount as the already existing support order. Here, there is no such pre-existing order.

must be calculated based upon the guidelines *using the average income of the obligor over the past two years* and is presumed to be correct unless rebutted by either party. An amount should be included in the order to reduce the arrears judgment on a monthly basis *within a reasonable time.* [Emphases added.]

Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(1)(e)(1994). While we do not have before us the kind of "initial support" order contemplated by the regulation, we consider it to be persuasive on (1) the use of the obligor's current income and (2) the goal of repayment within a reasonable time. Accordingly, we direct that the Trial Court shall consider those as factors in setting a payment plan that will cover the post judgment interest and result in the judgment being satisfied within a reasonable period of time.

### Conclusion

The judgment of the Trial Court is affirmed as to the amount of retroactive child support due. The case is remanded to the Trial Court for the award of statutory post-judgment interest and for modification of the payment plan to incorporate post-judgment interest and to provide for payment of the judgment within a reasonable period of time. The costs on appeal are assessed against the parties evenly.