# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
MAY 26, 2010 Session

## STATE OF TENNESSEE, *ex rel* DONNA J. COTTINGHAM
## v. WILLIAM B. COTTINGHAM

**Direct Appeal from the Chancery Court for Williamson County**
**No. 22772      Robbie T. Beal, Chancellor**

---

**No. M2008-02381-COA-R3-CV - Filed July 27, 2010**

---

This appeal involves a father's child support and alimony arrearages. The trial court found the father in contempt and sentenced him to ten days in jail, with three days suspended. The court also awarded interest on the alimony and child support arrearages. We affirm in part and reverse and vacate in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed and Vacated in Part**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Lauren W. Moss, Franklin, Tennessee, for the appellant, William B. Cottingham

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Amy T. McConnell, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee *ex rel* Donna J. Cottingham

## OPINION

### I. FACTS & PROCEDURAL HISTORY

William Cottingham ("Father") and Donna Cottingham ("Mother") have one daughter, who was born in 1983. When Father and Mother divorced in 1996, Father was ordered to pay $1,150 per month in child support and $600 per month in rehabilitative alimony for five years. The parties' daughter turned eighteen in 2001. On December 11, 2002, a judgment was entered against Father for $73,117.69 in alimony and child support arrearages. The judgment included a $36,000 alimony arrearage, as the court found that he had "never made a payment," and a child support arrearage of $37,117.69. On October 6, 2004, another judgment was entered against Father after the court determined that he still owed $30,500.58 on his child support arrearage. Father was ordered to pay $300 per month toward the child support arrearage. An agreed order was entered in 2005 whereby Father agreed to increase his child support arrearage payment to $600 per month.

Father consistently made his child support arrearage payments until he lost his job in February 2008. He contacted Child Support Services to request a temporary reduction in his arrearage payment until he could find another job, but he was told that he would have to petition the court for relief. On May 6, 2008, the State of Tennessee, on behalf of Mother, filed a "Motion to Determine Child Support and Alimony Arrearage," seeking an order reducing Father's arrearage to judgment and further requesting that statutory interest be set on the judgment. The State claimed that Father still owed $12,096.88 on his child support arrearage. Thereafter, the State filed a petition to show cause seeking to have Father held in contempt for failing to make payments toward his child support arrearage since February 22, 2008.

At a hearing on July 14, 2008, Father testified that he was laid off from his job as a traffic reporter due to lack of work after his employer lost some of its contracts. He introduced a letter from his former employer corroborating his testimony. Father testified that he had submitted approximately fifty to seventy-five job applications on the Internet and that he was also attending a class "for networking and finding jobs." He named numerous companies to which he had applied unsuccessfully and said he had even applied for positions earning eight and ten dollars an hour. Father testified that his "take-home" amount of unemployment compensation was less than $800 per month.

Mother testified that Father had only paid about $225 toward his child support arrearage since he lost his job in February. She testified that Father worked in television production during the parties' marriage and that she had no personal knowledge about why he could not work.

-2-

The trial court entered an order on September 22, 2008, finding that Father was $1,200 delinquent in his arrearage payments, despite "a good history of paying." The court further found that Father "made good faith attempts to reconcile his current inability to pay with the Child Support offices," but nevertheless, the court found Father in contempt and sentenced him to ten days in jail, with three days suspended. The court instructed counsel for the parties to submit written memoranda on the issue of imposing interest on the prior judgments. Regarding the interest calculations, the State argued that interest should be imposed beginning in 1996 when Father was originally ordered to pay alimony and child support. Father, however, argued that the doctrine of *res judicata* prohibited the court from "going behind" the 2002 and 2004 orders, claiming that those orders conclusively established his total arrearages as of their respective dates of entry.

On October 2, 2008, the trial court entered an order finding that "it would be improper to assess interest prior to the [2002 and 2004] court dates under the theory of *res judicata*." However, the court awarded ten percent interest on the alimony arrearage judgment of $36,000 since its date of entry on December 11, 2002, and it awarded twelve percent interest on the most recent child support arrearage judgment since its date of entry on October 6, 2004. The total interest due on the alimony judgment was calculated to be $20,893.55. The remaining balance owed on Father's child support judgment was determined to be $10,175.72, and the interest due on that amount was calculated at $8,735.40. Father timely filed a notice of appeal.

## II.    DISCUSSION

### A.    Contempt

Father's first issue on appeal challenged the trial court's decision to hold him in contempt. However, the State's brief on appeal states that it "will not pursue the contempt finding on appeal" because there was no finding by the trial court that Father's actions were willful, and the State "concedes that the evidence at trial failed to establish [Father's] ability to pay." One of the essential elements of a civil contempt claim based upon alleged disobedience of a court order is that "the person's violation of the order must be 'willful.'" *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 355 (Tenn. 2008) (citing Tenn. Code Ann. § 29-2-102(3)). In order to find that failure to pay alimony and child support was contemptuous, "the court first must determine that [the obligor] had the ability to pay at the time the support was due and then determine that the failure to pay was wilful." *Ahern v. Ahern*, 15 S.W.3d 73, 78-79 (Tenn. 2000). The trial court failed to make such findings in this case, and the evidence would not support such findings. Therefore, the trial court's finding of contempt is reversed and the sentence is vacated.

### B. Standing

Next, Father raises various arguments regarding whether the State of Tennessee and/or Policy Studies, Inc. d/b/a Child Support Services of Tennessee ("PSI") had standing to petition the court on Mother's behalf. At the hearing before the trial court, Father's attorney argued that "the state by way of the Child Support Office lacked any standing" to represent Mother in her attempt to enforce the alimony obligation because the child was no longer a minor and no longer lived with Mother. He went on to quote a provision of a contract that allegedly exists between the State of Tennessee and PSI, authorizing PSI to enforce "all orders of support," which "shall include, *but are not limited to*, the enforcement of spousal support when it is contained in the same order with child support . . . and when the child who is due the child support continues to reside with the parent due the spousal support." (emphasis added).

Father previously appealed to this Court after the arrearage judgments were entered in 2002, *see State ex rel. Cottingham v. Cottingham*, No. M2003-00535-COA-R3-CV, 2004 WL 2387563, at *2 (Tenn. Ct. App. W.S. Oct. 26, 2004) *rev'd on other grounds*, 193 S.W.3d 531 (Tenn. 2006), and he raised this same argument. He contended that "the attorney under contract with the State of Tennessee to enforce child and spousal support orders does not have the standing, under the contract, . . . to assist clients with alimony issues after the emancipation of the children for whom support was ordered." We noted that the contract upon which Father relied was not in the record before us but went on to reject his argument as follows:

> However, it is plain that Mr. Cottingham's argument is without merit. Mr. Cottingham is not a party to the contract in question. Nor is Mr. Cottingham a third-party beneficiary of the contract. He cannot be heard to assert rights based on a contract to which he is neither a party nor a third-party beneficiary. As the appellee correctly points out in its appeal brief:
>
>> [Mr. Cottingham] has no say in what attorney represents his ex-wife. Nor does he have any say in the terms of the representation, such as whether she has to pay for such legal services or how much the fee will be. Nor does the Appellant have any say in the scope of the representation. Those are matters between DHS, its contractor and Ms. Cottingham. The Appellant is not even a third party beneficiary of the contract between DHS and its child support contractor. Thus, the Appellant has no legal right to raise the issue at all.

We agree with the appellees' analysis in concluding that Mr. Cottingham has no standing to contest the scope of representation provided to Donna Cottingham by her counsel. Therefore, this assignment of error is without merit.

*Id.* at *2. We note that our opinion in the first appeal of *Cottingham* was designated a memorandum opinion, which "shall not be published, and shall not be cited or relied on for any reason in any *unrelated* case." (emphasis added). However, this case is clearly related, and Father cannot raise the same argument now that we rejected in the previous appeal.

Father's initial brief on appeal also questions "[w]hether the State of Tennessee and/or Policy Studies, Inc. had standing to pursue the collection of alimony" under various federal statutes found in Title IV-D of the Social Security Act. Father's reply brief further contended that the State and/or PSI lacked standing to pursue the collection of child support in this case under Title IV-D. When addressing standing before the trial court, Father's counsel did not discuss the federal statutes and only mentioned the alleged contractual limitation. Thus, we deem Father's arguments based on his interpretation of the federal statutes waived because "[i]ssues not raised in the trial court cannot be raised for the first time on appeal." *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006). In addition, we will not consider an issue raised for the first time in a reply brief as properly raised on appeal. *Castle v. State, Dep't of Corr.*, No. E2005-00874-COA-R3-CV, 2005 WL 2372762, at *4 (Tenn. Ct. App. Sept. 27, 2005).

## C. Interest

Finally, Father contends that the trial court erred in imposing interest on the child support arrearage and the alimony arrearage. The State's brief on appeal states that it "will not seek to have the interest that was applied to [Father's] child support payments affirmed" because the State "concedes that calculating interest on the arrearages now would be an impermissible retroactive modification of child support and in part is *res judicata* based on the court's prior orders." Thus, we reverse and vacate the trial court's award of interest on Father's child support arrearage. However, we express no opinion as to the merit, or lack thereof, in the State's reasoning.

The State does ask this Court to affirm the trial court's award of interest on the alimony arrearage, and Father seeks to have the award reversed.[1] "Interest on judgments in Tennessee is statutorily mandated, and 'shall be computed at the effective rate of ten percent

---

[1] We note that the State does not argue that the trial court erred in refusing to calculate interest prior to the 2002 judgment.

per annum.'" ***Tallent v. Cates***, 45 S.W.3d 556, 563 (Tenn. Ct. App. 2000) (citing Tenn. Code Ann. § 47- 14-121). The failure of a court to expressly provide for such postjudgment interest in the judgment does not abrogate the statute. ***Id.*** (citing *Inman v. Inman*, 840 S.W.2d 927, 932 (Tenn. Ct. App. 1992)). "[W]e have concluded on many occasions that post-judgment interest is mandatory." ***Hommerding v. Hommerding***, No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *10 (Tenn. Ct. App. W.S. June 15, 2009) (citing *State v. Thompson,* 197 S.W.3d 685,693 (Tenn. 2006); *Vooys v. Turner*, 49 S.W.3d 318, 322 (Tenn. Ct. App. 2001)). "Post-judgment interest compensates the party who was entitled to money but deprived of its use by requiring an additional payment by one who benefitted from retaining the money." ***Lucius v. City of Memphis****,* 925 S.W.2d 522, 526 (Tenn. 1996).

Father argues that the facts of this case "exactly match" the circumstances considered in ***State ex rel. Jones v. May***, 2008 WL 2557374, at *2 (Tenn. Ct. App. 2008), and that the State is therefore barred from seeking interest on the arrearages. In ***Jones***, an order had been entered in 2005 holding that a father's child support arrearage from May 2004 until December 31,2004, equaled $7,777. ***Id.*** at *1. DHS subsequently terminated the father's wage assignment and informed credit agencies that his child support debt had been discharged. ***Id.*** Thereafter, DHS asserted that the father was in arrears on the interest he owed on child support in the amount of nearly $30,000, and the trial court entered an order finding that Father owed interest back to 1992. ***Id.*** On appeal, the Eastern Section of this Court reversed, stating:

> The doctrine of *res judicata* prevents a re-examination of "all matters material to the decision of the case which the parties exercising reasonable diligence might have brought forward at the [earlier] time." *Collins v. Greene County Bank*, 916 S.W.2d 941, 946 (Tenn. Ct. App. 1995). The doctrine is implicated when (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action. See *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). In the case before us, no one questions the jurisdiction of the trial court; the order of March 14, 2005, was on the merits, was not appealed from, and, with the passage of time, became final; the parties have been the same throughout this case; and the issue is and always has been that of child support. We hold that the March 2005 order covered the subject matter of the arrearage and is conclusive as to the *total* amount of Father's obligation as of the date of the order's entry, *i.e.*, March 14, 2005. Accordingly, the March 2005 order is *res judicata* as to the arrearage issue. The court cannot go behind that order. Father's total obligation as of March 14, 2005, is as stated in the order of that date. It is clear from the record, that this obligation has been paid in full. On

the subject of periodic child support, Father has no further obligation to Mother or the State. Therefore, the "interest" determination by the trial court was erroneous and must be reversed.

*Id.* at *2. In sum, *Jones* held that the previous order was "conclusive as to the total amount of Father's obligation *as of the date of the order's entry*." (emphasis ours). In this case, however, the trial court did not "go behind" the most recent order establishing Father's alimony arrearage. It simply calculated the interest owed since the 2002 judgment was entered. Thus, *Jones* does not require that we vacate the interest award, and it is hereby affirmed.

### III. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court awarding interest on Father's alimony arrearage. We reverse and vacate the trial court's finding of contempt, Father's jail sentence, and the award of interest on Father's child support arrearage. Costs of this appeal are taxed equally to the appellant, William B. Cottingham, and the appellee, State of Tennessee, ex rel Donna J. Cottingham, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.