FILED
05/14/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 2, 2020 Session

## MARK YOUNG ET AL. V. H & H TESTING, LLC ET AL.

**Appeal from the Chancery Court for Montgomery County**
**No. CD-16-10    Laurence M. McMillan, Jr., Chancellor**

_____

### No. M2020-00145-COA-R3-CV

_____

This appeal arises from a financial dispute between a drug testing laboratory, H & H Testing, Inc. ("H & H Testing" or "H & H"), and Wesley Young, for whom H & H performed 64 qualitative drug screens while Mr. Young was a client of Transcend Recovery Community ("Transcend"), which operates recovery communities nationwide. Upon commencing treatment for drug addiction at Transcend, Mr. Young agreed to adhere to treatment guidelines that included abstaining from drugs and alcohol and submitting to a rigorous drug screening protocol. Pursuant to this protocol, Transcend forwarded 64 of Mr. Young's random urine samples to H & H Testing for comprehensive laboratory testing. After H & H performed each drug screen, it submitted a claim to Mr. Young's health insurance provider, BlueCross BlueShield of Tennessee ("BlueCross" or "BCBST"). BlueCross approved each and every claim submitted by H & H Testing and remitted payment for the services rendered by H & H in the aggregate of $85,837.11. Because H & H Testing was an out-of-network provider, BlueCross remitted payment for the services rendered by H & H to its insured, Mr. Young, expecting he would forward the proceeds to H & H. Instead of remitting the funds to H & H Testing, Mr. Young entrusted the money to his parents, but they did not forward the proceeds to H & H. When H & H Testing demanded payment, Mr. Young and his parents commenced this action to declare the rights of the parties to the funds. They contended that H & H Testing was not entitled to the insurance proceeds because Mr. Young did not have a contract with H & H Testing, its services were not medically necessary, and the charges were exorbitant. H & H Testing filed an answer and counterclaims for breach of contract, conversion, and unjust enrichment. Following a hearing on cross-motions for summary judgment, the trial court granted summary judgment in favor of H & H Testing without identifying the claims upon which the judgment was granted and imposed a constructive trust over the insurance proceeds. This appeal followed. We affirm the trial court's decision to grant summary judgment in favor of H & H Testing based on its claims of conversion and unjust enrichment. But we vacate the trial court's decision to impose a constructive trust over the proceeds because the parties failed to raise the issue in any of the pleadings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Vacated in part, and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

William B. Hubbard and William E. Young, Nashville, Tennessee, for the appellants, Mark Young, Karen Young, and Wesley Young.

W. Brantley Phillips, Jr., Matthew J. Sinback, and Margaret V. Dotson, Nashville, Tennessee, for the appellees, H & H Testing, LLC and H & H Testing, Inc.

**OPINION**

Wesley Young, a resident of Tennessee, received drug treatment for opioid addiction at Transcend in Santa Monica, California, from June 2013 to November 2014.[1] During this time, Mr. Young submitted 64 urine samples to Transcend, and Transcend sent those samples to H & H Testing to conduct qualitative drug screens.[2] Acting pursuant to its standard practice, when Transcend collected each urine sample, Mr. Young signed a drug screen requisition form. Transcend used these forms to get the client's consent for Transcend and third parties to screen the client's urine for drugs and alcohol.

Acting in accordance with standard practices and Mr. Young's written authorization, H & H Testing tested Mr. Young's urine samples and reported the results to Transcend for its program-compliance efforts.[3] H & H Testing then submitted its claims

---

[1] Mr. Young was 17 years old when he was admitted to the program and 18 when he completed the program at Transcend.

[2] H & H Testing operates a qualitative drug screening laboratory in Los Angeles, California, which is licensed and accredited by the Clinical Laboratory Improvement Amendments, the Commission on Office Laboratory Accreditation and the California Department of Health.

[3] At Transcend's direction, after conducting the qualitative drug screens, H & H Testing sent each urine sample to unaffiliated laboratories for "confirmatory" screening. Between June 2013 and October 2014, H & H sent the urine samples to Avee Laboratories ("Avee"). Between October 2014 to November 2014, H & H sent all urine samples received from Transcend to Millennium Laboratories, LLC ("Millennium") for confirmatory screening. As H & H states in its brief,

> In contrast to the qualitative screening that H & H Testing performed, Avee and Millennium performed confirmatory or "quantitative" screening—a type of testing that can determine the specific amounts of individual drugs in a client's system and can detect the presence of certain substances, such as synthetic drugs, that qualitative screens typically cannot detect. . . . Avee's and Millennium's billing for confirmatory screens and the costs of these screens were not included in H & H Testing's qualitative drug screening charges.

for payment to BlueCross, Mr. Young's health insurance provider. BlueCross approved H & H Testing's claims but, because H & H Testing was out-of-network, BlueCross remitted payment to its insured, Mr. Young.[4] Believing the payments were reimbursement for his treatment at Transcend, Mr. Young gave the money to his parents. Thereafter, H & H Testing sent letters to Mr. Young dated November 4, 2015, January 19, 2016, and March 15, 2016, asking Mr. Young to forward the insurance proceeds.

On April 8, 2016, Mr. Young and his parents, Mark and Karen Young, (collectively, "Petitioners") filed a Petition for Declaratory Judgment in Montgomery County Chancery Court, claiming H & H Testing was not entitled to the insurance proceeds because Mr. Young never contracted with H & H Testing to perform laboratory services, the claims submitted to BlueCross were fraudulent, the charges were exorbitant, and the services were not medically necessary. In the alternative, Petitioners claimed H & H Testing was only entitled to quantum meruit relief in the amount of $1,152 based on what the State of Tennessee paid for similar services.[5]

H & H Testing filed an answer denying Petitioners' allegations and counterclaimed for breach of contract, conversion, unjust enrichment, and declaratory judgment. H & H Testing alleged that each time Mr. Young submitted a urine sample for testing, he signed a "requisition form" authorizing it to conduct the tests and expressly assigning his right to any insurance proceeds to H & H Testing. Further, H & H Testing alleged that it billed BlueCross for its services, and BlueCross sent $85,837.11 to Mr. Young to satisfy its claims; however, Mr. Young failed to forward the payment to H & H Testing following multiple requests that he do so.

Petitioners filed an answer denying H & H Testing's counterclaims, and, following discovery, the parties filed cross-motions for summary judgment. However, the trial court denied the motions because BlueCross was an indispensable party. As such, the court ordered Petitioners to add BlueCross as a party-defendant.

---

[4] BlueCross's practice of sending the payment for an out-of-network-provider's services directly to the patient is a controversial one and has resulted in a number of lawsuits. Critics of the practice contend it is "a revenge tactic against doctors, hospitals, treatment facilities, and other medical providers that don't agree to insurance companies' demands to be 'in network,' by making them chase down money." Wayne Drash, *Insurer Skips Doctors and Sends Massive Checks to Patients, Prompting Million-Dollar Lawsuit*, CNN Health (March 1, 2019), https://www.cnn.com/2019/03/01/health/anthem-insurance-payments-patients-eprise/index.html. Insurance companies dispute these claims. *Id*.; *see Martin Luther King, Jr. Cmty. Hosp. v. Cmty. Ins. Co.*, No. 2:16-CV-03722-ODW(RAOx), 2018 WL 3830009, at *1 (C.D. Cal. July 5, 2018), *aff'd* 829 F. App'x 156 (9th Cir. 2020).

[5] On August 16, 2013, after learning that H & H Testing, LLC, had converted to H & H Testing Inc., Petitioners filed an amended petition noting that H & H Testing converted to a corporation and attaching relevant documents from the California Secretary of State.

BlueCross filed a statement[6] with the court in which it explained its policy of remitting payment for out-of-network providers to the insured subscriber. Because H & H Testing was an out-of-network provider, BlueCross sent payment for H & H Testing's claims to Mr. Young with the expectation that Mr. Young would forward the payment to H & H Testing. BlueCross further explained that, because neither party was asserting any claims against it and because BlueCross did not intend to assert any claims against either party or to the funds, BlueCross was "not affected by the resolution of any issue before the Court." Thereafter, the parties filed renewed cross-motions for summary judgment supported by statements of disputed and undisputed facts.

For its part, H & H Testing contended it was entitled to judgment as a matter of law on its claims for breach of contract or, in the alternative, for unjust enrichment and conversion. In its statement of undisputed facts, H & H Testing relied on, *inter alia*, the affidavit of Asher Gottesman, Founder and Chief Executive Officer of Transcend; the affidavit of David Kalish, Director of H & H Testing; and documentation that included a copy of two requisition forms signed by Mr. Young and an Explanation of Benefits that BlueCross sent to Mr. Young regarding H & H Testing's claims.

H & H Testing also relied on BlueCross's statement declarations that (1) the $85,837.11 payment was for covered services performed by H & H Testing; (2) BlueCross has a policy of paying out-of-network providers like H & H Testing by sending payment to the insured with the expectation that the insured will forward the funds to the provider; and (3) BlueCross followed that policy here. Yet, according to H & H Testing, instead of remitting these funds to H & H Testing, as BlueCross intended and as he was obligated to do, Mr. Young gave the money to his parents. H & H Testing contended that, during Mr. Young's treatment at Transcend, Mr. Young submitted 64 urine samples for testing, and each time, he signed a requisition form authorizing third-party laboratories to perform the tests. Moreover, H & H Testing claimed that, by signing the form, Mr. Young expressly assigned his right to the insurance proceeds for such testing to these third-party laboratories.

Based on these and other facts identified in its statement of undisputed facts, H & H argued that (1) Mr. Young agreed for a testing laboratory, such as H & H Testing, to provide qualitative drug screens as part of his treatment for drug abuse; (2) Mr. Young assigned his rights to the insurance proceeds—the $85,837.11 he received from BlueCross—to H & H as payment for the testing services; and (3) Mr. Young failed to remit the $85,837.11 to H & H in breach of the agreement. Alternatively, H & H argued the parties had a contract implied in law because H & H provided a valuable service to Mr. Young, the parties understood that H & H expected to be compensated, and it would be

---

[6] BlueCross claimed that it had not yet been served with an amended petition adding it as a party but was provided with the trial court's order. The statement provided by BlueCross was not a sworn statement.

unjust for Mr. Young to retain the benefits of these services without providing compensation. As for the conversion claim, H & H contended Mr. Young and his parents exercised dominion and control over the insurance proceeds that BlueCross intended for H & H in defiance of H & H Testing's right to the proceeds.

In Petitioners' response to H & H Testing's summary judgment motion and in their cross-motion for summary judgment, Petitioners submitted the affidavit of Mr. Young, who stated that he agreed to twice-weekly drug tests but that Transcend used a test that provided instant results. Thus, while he signed a requisition form each time, Mr. Young believed the form was only to acknowledge the results of the instant drug test, not to authorize H & H Testing to conduct further tests. Mr. Young claimed that, because the print on the requisition form was illegible, it was disputed whether he contractually agreed to further testing.[7] Petitioners also claimed that the EOBs listed the service as "Hospital Outpatient Services," not laboratory services; thus, Petitioners believed the money paid to Mr. Young by BlueCross was for Transcend's services. Mr. Young also contended that, because his results were negative for illicit substances in every instance, it was unnecessary to send the samples to H & H Testing for further tests.[8]

Based on the foregoing, Petitioners argued (1) Mr. Young did not have a contract with H & H Testing to pay for its laboratory services; (2) because H & H Testing did not perform a valuable, medically necessary service, it was not entitled to quantum meruit relief; and (3) given that H & H Testing did not have a right to the insurance proceeds, Petitioners were not liable for conversion. H & H Testing filed a response contending the court should deny Petitioners' motion for summary judgment and grant its motion for the reasons stated in its motion for summary judgment.

The court held a hearing on December 13, 2019, and entered an order on January 2, 2020, granting H & H Testing's motion for summary judgment and denying Petitioners' motion based on the following findings:

---

[7] The smaller print in the requisition forms, as they appear in the record before this court, is illegible. This may be the result of repeated acts of photocopying photocopies. Thus, we are unable to decipher what was agreed to and authorized based on the requisition forms.

[8] This assertion was supported by the affidavit of Kevin Scarborough, Contracts Manager for Community Rehabilitation Agencies of Tennessee. He claimed that it was industry practice, when conducting an instant drug test, to send only positive findings to laboratories for further drug testing. Therefore, based on Mr. Scarborough's affidavit, Petitioners argued H & H Testing was not entitled quantum meruit relief because H & H Testing did not perform a valuable, medically necessary service. Mr. Scarborough also stated that the State of Tennessee contracted to pay $19 for the type of test performed by H & H Testing, which was significantly less than what H & H Testing charged. Therefore, Petitioners disputed H & H Testing's contention that $85,837.11 represented the reasonable value of its services.

As grounds for its ruling, the Court finds that, during his treatment at Transcend Recovery Community, Petitioner/Counter-Respondent Wesley Young signed at least sixty-four (64) requisition forms that assigned his rights to any insurance proceeds for laboratory drug screening to the rendering provider—here, H & H Testing. The Court further finds that Mr. Young's insurer, BlueCross BlueShield of Tennessee ("BCBST"), paid $85,837.11 in insurance proceeds on the basis of claims submitted in connection with drug screening services rendered by H & H Testing for the benefit of Mr. Young. Further, the Court finds that BCBST paid the $85,837.11 to Mr. Young on the expectation that Mr. Young would remit that payment to H & [H] Testing. Instead, Mr. Young gave the $85,837.11 to his parents.

The court also imposed a constructive trust over the insurance proceeds in the amount of $85,837.11 in favor of H & H Testing.

This appeal followed.

### STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*

*v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

When the moving party is also the party that bears the burden of proof, in order to satisfy the requirements of Rule 56, the movant must allege undisputed facts establishing the elements of his claim, which would entitle the plaintiff to judgment as a matter of law. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 n.6 (Tenn. 2008), *overruled on other grounds by Rye*, 477 S.W.3d 235.

### ISSUES

Petitioners raise the following issues:

I.      Did the trial court err in failing to recognize that Mr. Young was the assignee of the proceeds from BlueCross?

II.     Did the trial court err in granting H & H Testing's motion for summary judgment?

III.    Did the trial court err by imposing a constructive trust in favor of H & H Testing when this issue had not been raised and argued by the parties and no grounds existed for a constructive trust?

Additionally, H & H Testing asks whether it is entitled to post-judgment interest. We will consider each issue in turn.

### ANALYSIS

### I. ASSIGNMENT OF PROCEEDS

Petitioners' primary argument is that "[o]nce BCBST sent the proceeds at issue directly to its insured, [Mr. Young], then [he] as the assignee of these proceeds obtained all the rights and liabilities held by the assignor BCBST." We find this argument is waived because it is being raised for the first time on appeal.

In its brief on appeal, H & H Testing states that Petitioners "never argued" that BlueCross assigned the insurance proceeds and its rights and liabilities to Wesley Young. As it asserts in its brief,

> [r]ather, [Petitioners] made the baseless accusation that H & H Testing—apparently at the direction of Transcend—had developed a scheme to defraud drug addicts. They then argued only that there was no contract between Mr. Young and H & H Testing, and H & H Testing was either not entitled to

*quantum meruit* recovery or was limited to a recovery of just $1,216. Moreover, the Youngs never explained why they had the right to retain for themselves the $85,837 windfall received from BCBST to pay for H & H Testing's services.

(Citations and footnote omitted).

In their reply brief, Petitioners fail to cite facts in the record that identify when and in what manner the issue was raised in the trial court. Further, they merely state "[t]he Defendants were fully aware of the Plaintiffs' assertion of these defenses." Such vagueness fails to comply with Rule 27(a)(6) of the Tennessee Rules of Appellate Procedure (requiring the appellant's brief to include "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record"). Petitioners also failed to comply with Rule 6(b) of the Rules of the Court of Appeals ("No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded."). Therefore, Petitioners have failed to establish that the issue was properly raised in the trial court.

"[A] party who fails to raise an issue in the trial court waives its right to raise that issue on appeal." *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009).[9]

## II. SUMMARY JUDGMENT

In granting H & H Testing's motion for summary judgment, the court did not specify whether it granted summary judgment based on the breach of contract, conversion, or unjust-enrichment claim. Accordingly, we analyze the record to determine whether, as Petitioners allege, the trial court erred in granting H & H Testing's motion for summary judgment on any of its claims. Having done so, we have concluded that the undisputed facts establish all the elements of H & H Testing's conversion and unjust enrichment claims.

---

[9] It is also relevant to note that BlueCross stated the following in its response to Petitioners' amended petition:

BCBST remitted to Wesley Young all amounts and benefits owed under Mr. Young's insurance coverage for the drug testing claims that had been submitted. When BCBST remits payment directly to an insured for an out-of-network claim in this way, the purpose for which it does so is for the insured, in turn, to remit that money to the provider in payment for the covered services.

## A. Conversion

The elements of conversion are "(1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012). Though conversion is an intentional tort, the requisite intent "does not necessarily have to be a matter of conscious wrongdoing." *Cooley v. First Am. Bank*, No. E2001-02185-COA-R3-CV, 2002 WL 460270, at *3 (Tenn. Ct. App. Mar. 26, 2002) (quoting *Gen. Elec. Credit Corp. of Tennessee v. Kelly & Dearing Aviation*, 765 S.W.2d 750, 753–754 (Tenn. Ct. App. 1988)). Rather, "the defendant 'need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so.'" *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008) (quoting *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)). Pertinent here, the "plaintiff must demonstrate legal ownership or an immediate superior right of possession" to the property. 7 Stuart M. Speiser et. al, *American Law of Torts* § 24:1 (March 2021 Update).

Petitioners conceded in their cross-motion for summary judgment and on appeal that BlueCross paid the claims submitted by H & H Testing directly to Mr. Young, and Mr. Young gave the money to his parents instead of forwarding the payment to H & H Testing. Mr. Young stated in his affidavit:

> ***H & H submitted claims to my insurance carrier***. The claims were for "Hospital Outpatient Services", [sic] not laboratory testing. A copy of a typical Explanation of Benefit (EOB) from my insurance carrier is attached as Exhibit C. ***These EOBs were received with the payments from the insurance carrier***. I believed that the payments from the insurance carrier were to reimburse me for the cost of my treatment. Because my parents paid for my treatment, ***I forwarded the payments to my parents, Petitioners Mark and Karen Young***.

(Emphasis added). Likewise, Petitioners summarized the foregoing affidavit in their brief on appeal stating, "BCBST paid the full amount of the claims submitted by H & H directly to Wesley Young," and "the funds were in turn given by him to his parents to help reimburse them for the cost of his treatment." Thus, the undisputed facts established that the insurance proceeds were intended for H & H Testing, and Mr. Young exercised dominion and control over the proceeds in defiance of H & H Testing's right to them. *See Hanna*, 275 S.W.3d at 427.

The foregoing notwithstanding, Petitioners argue H & H Testing did not have a right to the insurance proceeds because Mr. Young did not have a contract with H & H Testing to perform the services, the services were not medically necessary, and the charges were excessive. In essence, Petitioners take issue with BlueCross's decision to pay H & H

Testing for its services. But it is not this court's task to delve into BlueCross's criteria for approving and paying claims. That is immaterial here. What is material to the conversion claim is the undisputed fact that the payment BlueCross sent to Mr. Young for $85,837.11 was intended for H & H Testing. Thus, the funds belonged to H & H Testing. As previously stated, Petitioners conceded in their brief on appeal and in Mr. Young's affidavit that the insurance proceeds were intended to satisfy H & H Testing's claims. That fact is undisputed.

Moreover, Mr. Young admitted in his supplemental affidavit that Petitioners did not have a right to retain those funds: "If the Court finds that H & H does not have a right to the insurance proceeds, then I am aware that my insurance carrier has a claim for a refund." That said, BlueCross never asked for a refund, nor did it ask Petitioners to take up its cause. Simply put, it is undisputed that the funds belonged to BlueCross, only BlueCross had the right to decide who was entitled to the funds, and BlueCross decided who was entitled to the funds—H & H Testing. Thus, given that Petitioners concede that the money does not belong to them and given that the money was intended for H & H Testing, H & H Testing sufficiently demonstrated "an immediate superior right of possession." Speiser, *supra*, at § 24:1.

Therefore, we have determined the undisputed facts establish that H & H Testing was entitled to judgment as a matter of law based on its claim of conversion.

## B. Unjust Enrichment

In the alternative to its claim based on an express or implied-in-fact contract, H & H seeks to recover the funds at issue based on a contract implied in law, also referred to as quantum meruit or unjust enrichment.[10] *See Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998). In *Paschall's, Inc. v. Dozier*, the Supreme Court explained contracts implied in law as follows:

> 'Contracts implied in law, or more appropriately, quasi or construction contracts, are a class of obligations which are imposed or created by law without the assent of the party bound, on the ground that they are dictated by reason and justice . . . .'

---

[10] H & H also asserted claims based on an express contract and an implied-in-fact contract; however, the trial court did not make a specific finding that an express or implied-in-fact contract existed. Moreover, Petitioners insist they have no contract of any kind with H & H Testing, and the authorization forms, on which the contract claims are based, are so illegible, particularly the text directly above Mr. Young's signature, that we find the proof insufficient to establish that an enforceable contract exists. Accordingly, H & H is permitted to pursue a quantum meruit claim as an equitable substitute for a contract claim. *See Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998).

> Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto.

.    .    .

> The apparent reason is that such contracts are not based upon the intention of the parties but are obligations created by law. They are founded on the principle that a party receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.

407 S.W.2d 150, 154 (Tenn. 1966) (quoting *Weatherly v. Am. Agr. Chem. Co.*, 65 S.W.2d 592, 598 (Tenn. Ct. App. 1933)).

As the affidavits of Mr. Kalish and Mr. Gottesman clearly reveal, the undisputed facts are that H & H Testing provided qualitative drug screens as a vital feature of Mr. Young's drug treatment and as a mandatory condition for his treatment to continue. More specifically, H & H Testing performed the complex qualitative drug screens needed to accurately determine if Mr. Young was using drugs during his treatment at Transcend, and it is undisputed that H & H Testing, in fact, performed drug screens on Mr. Young's urine samples. Further, whether "the instant tests" performed by Transcend or the confirmatory screens performed by Avee and Millennium were necessary is both irrelevant and immaterial to H & H's claim for payment for its services. What is relevant, material, and undisputed is that Wesley Young would not have been permitted to remain in treatment at Transcend but for the testing performed by H & H, as mandated by Transcend and agreed to by Wesley Young. Moreover, and significantly, it is undisputed that Mr. Young received the benefit of H & H's drug screens, H & H reasonably expected to be compensated for its services, and there is no evidence whatsoever that Petitioners made any out-of-pocket payments for any qualitative drug screening performed by H & H Testing.

The material and undisputed facts also establish the final element of a contract implied in law claim—that is, whether it would be unjust for Mr. Young to receive the benefit of the qualitative drug screening services without H & H Testing being paid for its services. Simply stated, it would be unjust for the Youngs to retain these funds. *See Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) (setting forth the required elements of an unjust-enrichment claim as (1) a benefit conferred upon a party by the other; (2) appreciation by the recipient of such benefit and (3) acceptance of such benefit under such circumstances that it would be inequitable for the receiving party to retain the benefit without payment of the value thereof); *see also Freeman Indus., LLC v. Eastman Chem.*

*Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) ("[A] plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust.").

Based on these undisputed facts, Petitioners' denial of the existence of an express contract with H & H, and there being insufficient proof to establish that an express contract exists between H & H Testing and Wesley Young or the Petitioners, H & H Testing is entitled to summary judgment based on quantum meruit. *See Paschall's, Inc.*, 407 S.W.2d at 154.

### III. CONSTRUCTIVE TRUST

Petitioners also contend the trial court erred by imposing a constructive trust in favor of H & H Testing because this issue had not been raised in any of the pleadings nor argued by the parties. Our Supreme Court has explained that "the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Therefore, "a judgment beyond the scope of the pleadings is beyond the notice given the parties and . . . should not be enforced." *Elec. Controls v. Ponderosa Fibres of Am.*, 19 S.W.3d 222, 227 (Tenn. Ct. App. 1999) (quoting *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). Accordingly, the trial court's decision to impose a constructive trust on the proceeds is vacated.

### IV. POST-JUDGMENT INTEREST

As a precautionary move, H & H Testing asks us to determine whether it is entitled to post-judgment interest. This request is due to the fact that, after the December 2019 summary judgment hearing, H & H Testing submitted a proposed final order that, among other things, specified that post-judgment interest was awarded to H & H Testing; however, the Chancellor crossed through this text. Thus, H & H Testing contends, to the extent the Final Order can be construed as barring H & H Testing from collecting post-judgment interest, the trial court erred.

We find no error with the court striking through this portion of the proposed order because the court did not rule that H & H Testing was not entitled to post-judgment interest. An award of post-judgment interest is controlled by Tenn. Code Ann. § 47-14-122, which provides:

> Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

"The purpose of post-judgment interest is to compensate a successful plaintiff for being deprived of the compensation for its loss between the time of the entry of the judgment awarding the compensation until the payment of the judgment by the defendants." *State v. Thompson*, 197 S.W.3d 685, 693 (Tenn. 2006) (quoting *Varnadoe v. McGhee*, 149 S.W.3d 644, 650 (Tenn. Ct. App. 2004)). Interest on judgments in Tennessee is statutorily mandated. *See* Tenn. Code Ann. § 47-14-121. "The failure of any court to expressly provide such interest in its judgment does not abrogate the statute." *Tallent v. Cates*, 45 S.W.3d 556, 563 (Tenn. Ct. App. 2000) (citing *Inman v. Inman*, 840 S.W.2d 927, 932 (Tenn. Ct. App. 1992)).

Accordingly, on remand, H & H Testing will be entitled to post-judgment interest computed from the day on which the court entered a judgment in its favor. *See* Tenn. Code Ann. § 47-14-122.

## IN CONCLUSION

The judgment of the trial court is affirmed in part, vacated in part, and this matter is remanded with costs of appeal assessed against Mark Young, Karen Young, and Wesley Young jointly and severally.

_____

FRANK G. CLEMENT JR., P.J., M.S.