# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 25, 2012 Session

## CAROLINE TIPPENS-FLOREA v. JOHNATHAN MATTHEW FLOREA

**Appeal from the Circuit Court for Davidson County**
**No. 09D-1636      Carol Soloman, Judge**

---

**No. M2011-00408-COA-R3-CV - Filed May 31, 2012**

---

Following a short marriage, the parties were divorced. The issues raised in this appeal by the husband pertain to the marital classification and valuation of the husband's gun collection, the award of one year of transitional alimony to the wife, and the award of $15,000 for the wife's attorney's fees. For her part, the wife contends the husband has not paid the judgment for her portion of the marital estate, $8,065.94, and that she is entitled to post-judgment interest. We find no error with the valuation of the marital estate or the award of transitional alimony and attorney's fees and, thus, affirm the trial court. As for the wife's claim for post-judgment interest on any portion of the marital estate which the husband has not paid, it is an issue for the trial court to determine whether the husband has failed to timely pay any portion of the judgment and, if so, to award post-judgment interest pursuant to Tennessee Code Annotated §§ 47-14-121 & -122. The wife also seeks to recover attorney's fees she incurred on appeal. We find she is entitled to recover her reasonable and necessary attorney's fees and remand for the trial court to make the appropriate award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Steven C. Girsky, Clarksville, Tennessee, for the appellant, Johnathan Matthew Florea.

Karla C. Hewitt, Nashville, Tennessee, for the appellee, Caroline Tippens-Florea.

### OPINION

Caroline Tippens ("Wife") and Matthew Florea ("Husband") were married on June 30, 2007. Wife was twenty-two years old, and had recently graduated from the University of

Tennessee at Martin with a Bachelors degree in Sociology. Husband was twenty-seven years old at the time of marriage, and was doing contract work as an engineer for Hacket Precision Co., d/b/a HPC Automation, based out of Nashville, Tennessee ("HPC Automation"). Husband holds a Bachelors degree in Electromechanical Engineering Technology.

The couple began fighting over finances beginning with the purchase of the marital home in July 2007. Wife was starting law school at the Nashville School of Law in August 2007, and Husband had recently left his employment with HPC Automation and accepted a full-time, salaried position at Titan Automation in White Bluff, earning $65,000 per year. The parties purchased the 2,000-square-foot home for $235,000, with 100% financing. At the closing, Wife observed that her name did not appear on the deed or mortgage. Husband insisted on maintaining the mortgage in his name only due to Wife's credit, but on Wife's protest, he allowed her name to appear on the deed. Wife spent $13,000 making improvements to the marital residence, including purchasing and installing light fixtures, painting and decorating the interior of the home, landscaping the yard, and purchasing materials for a fence. Wife also furnished the home, using some furniture she already owned and purchasing the rest. Wife contributed to the parties' monthly bills early in the marriage, until the financing of Wife's education created another rift in the parties' relationship.

Prior to getting married, the parties agreed Husband would pay Wife's law school tuition and other expenses. However, approximately two weeks after the wedding, Husband informed Wife she would be responsible for the costs of her education. Wife paid for her first semester with savings, and began working as an administrative assistant at the Nashville office of the law firm Baker, Donelson, Bearman, Caldwell, & Berkowitz, earning $36,000 a year. Each month, Wife paid $500 toward her law school expenses. Not long after Wife began law school, Husband quit his job at Titan Automation and returned to HPC Automation, where he earned approximately $87,000 in 2007; $108,000 in 2008; and $96,000 in 2009.

Once Wife had her own income, the parties began keeping their finances separate from one another. They maintained separate checking, savings, and credit card accounts, and typically did not consult one another before making purchases or other financial decisions. Husband sold two boats and a motorcycle, and used the money to purchase a new motorcycle and new motorcycle gear. From July 2008 to November 2008, he paid an extra $15,000 (in addition to the regular payments) on a loan he had on his 2006 Hummer H3 vehicle in order to satisfy the loan early. He is also an avid gun collector and purchased numerous guns and boxes of ammunition during the marriage. Husband often left town to go on motorcycle trips with his father and his friends, and also took his friends and his father out to shoot guns. Husband had two retirement accounts that he began prior to the marriage, but he stopped making contributions to those accounts during the marriage, and opened an ING Shareholder

investment account. He also paid the monthly household bills, including the mortgage, electricity, and cable. When Wife began law school, she stopped contributing to the household expenses, although she provided Husband with health insurance coverage through her employment. Her income was put toward her law school expenses, gas and other maintenance for her 2003 Ford Mustang, which was given to her by her parents, pet care for her dog, and personal expenses. Wife generally used her disposable income to purchase purses, clothes and shoes.

Not surprisingly, the tension over finances led to problems in other areas of their lives. They constantly fought over allocation of household chores. During minor disagreements, Husband would threaten to divorce Wife. Both parties openly disliked and criticized one another's families; Husband even refused to stay in the home when Wife's parents visited. Wife had a large dog, which she left at home for long periods of time when she was working and attending law school, and during a fight, Husband told Wife he "whipped" her dog when he was home alone with the dog. The fights escalated to physical violence – during one fight the parties threw remote controls at one another, during another fight, Husband grabbed Wife by the ankles and dragged her across the floor. By May 2009, the relationship had become intolerable. Prior to separating, Wife decided to take an inventory of Husband's gun collection. When she discovered Husband had locked his gun closet, Wife broke into the closet so that Wife's father, who is also a gun enthusiast, could determine the value of the Husband's collection. Wife discovered several guns she was not aware Husband had purchased. When she confronted Husband about the gun collection, Husband threatened to call the police on Wife. Shortly thereafter, Wife began staying in a separate, locked portion of the marital residence.

On June 5, 2009, Wife filed a complaint for divorce on the grounds of irreconcilable differences and inappropriate marital conduct by Husband. In the complaint, Wife requested a temporary restraining order to "enjoin Husband from harassing, threatening, assaulting, intimidating, or abusing Wife in any way whatsoever." Wife also filed a motion requesting exclusive possession of the marital residence and pendente lite support. Husband denied Wife's allegations, and counterclaimed for divorce on the grounds of cruel and inhuman treatment in addition to irreconcilable differences and inappropriate marital conduct by Wife.

On July 30, 2009, the trial court entered an order granting Husband exclusive possession of the marital residence, and ordering Husband to pay $500/month in pendente lite support to Wife beginning August 1, 2009, as well as a one-time payment of $500 for Wife's moving expenses. Two weeks later, the parties submitted an agreed order dividing the home furnishings and personal belongings between themselves and dropping Husband from Wife's health insurance plan. The parties attempted to mediate the division of their remaining assets – consisting of Husband's gun collection, Husband's Hummer and

motorcycle, Wife's car, Husband's john boat, and the ING Shareholder account – their debts, including a $20,000 mortgage deficiency on the marital home and several personal credit card accounts, and the issue of spousal support, but the mediation was unsuccessful and the case was set for trial.

In the interim, Husband began to fall behind on his pendente lite support payments. Wife filed a Petition for Criminal Contempt against Husband on May 20, 2010, alleging Husband willfully and deliberately made late payments in March and April 2010, and failed to make the May 2010 payment. The petition was later amended to include June and July. At the hearing on the petitions, Husband testified that he quit his job at HPC Automation on June 29, 2010 to start his own engineering technology subcontracting business, "Autom8n," because several of his co-workers at HPC had already been laid off. To explain why he failed to make timely payments, Husband stated that he changed attorneys three times over the course of the proceedings, and between the growing attorney's fees and the uncertainty he felt about starting a new business, he was not in a position to continue making the pendente lite support payments to Wife. Husband's bank records, however, painted a slightly different picture. His bank statements showed a balance $2,545.78 at the end of May, and $2,045.78 at the end of June, after all of his monthly bills were paid, and the trial court held Husband in criminal contempt for the missed payments in May and June. Husband was not held in contempt for July because he attempted to pay Wife in July after the petitions were filed, but Wife refused to accept the payment. The trial court sentenced him to a $100 fine and twenty days in jail, and reserved ruling on whether Wife was entitled to attorney's fees until after the divorce hearing.

The hearing on the complaints for divorce took place September 21 & October 25, 2010. The most contentious issues were whether Husband's guns were marital property and the value of the guns. Wife's father, Clark Tippens ("Mr. Tippens") was qualified as an expert in assessing gun values. He testified as to which guns he observed in Husband's possession in the marital home in May 2009, and with the aid of the *Blue Book of Gun Values 31st Edition*, the value of those guns. When Husband testified, he stated that several of the guns actually belonged to Husband's father, Robert Florea ("Mr. Florea") and Husband was just borrowing them. Mr. Florea corroborated Husband's testimony as to which guns belonged to Husband. Husband also testified that the values given by Mr. Tippens were significantly higher than the purchase price of the guns, and that he believed the purchase price more accurately reflected the guns' value.

Both parties requested spousal support. Wife testified that she was on track to graduate from law school in May 2011 and take the Tennessee bar exam in July 2011. Until she received her bar exam results, she would continue working as an administrative assistant earning $36,000 a year. Husband testified that, since starting his own independent contracting

business, he anticipated earning approximately $5,700 a month, or about $68,400 a year. His paychecks indicated he earned $40,804.56 from January through July 15, 2010.

The final decree of divorce was issued January 24, 2011. Wife was granted a divorce based on Husband's inappropriate marital conduct as well as a permanent restraining order against Husband. The trial court also specifically found Husband was not a credible witness and that Wife was a credible witness, "even when it was uncomfortable for her." The trial court awarded Wife transitional alimony in the amount of $500 a month for twelve months, and $15,000 alimony in solido for attorney's fees.

As for the marital property, the trial court awarded Husband possession of the Hummer, the gun collection, and the ING Shareholder account, and ordered Husband to pay Wife a money judgment in the amount of $8,065.94 for her share of the division of marital property, to be secured by a lien on the Hummer. The award included 50% of the balance in the ING Shareholder account, or $1,205.35; about 27% of the value of the Hummer, or $3,558.09; and 50% of the value of the marital gun collection, or $3,302.50. To calculate Wife's portion of the gun collection, the trial court accepted Mr. Tippens' valuation of the guns, but credited Husband's testimony as to which guns actually belonged to Husband, for a total value of $6,605.[1] To calculate Wife's award for the Hummer, the trial court credited Husband's valuation at $13,205 and his testimony that he paid approximately 45% of the debt on the vehicle prior to the marriage; thus, the court found Wife was entitled to approximately 27% of the Hummer's fair market value, or half of the value added to the Hummer during the marriage.[2] Each party was awarded the personal property in his or her possession and any bank accounts in his or her name, and held responsible for any credit cards in his or her name, as separate property. Wife was also awarded her car as separate property, and Husband was awarded his motorcycle and boat as separate property.

Last, Husband was awarded the marital residence. At the time of the hearing, there was a $20,000 mortgage deficiency on the property. Husband stated that he wished to sell the marital residence and split any mortgage deficiency evenly between the parties. However, subsequent to the entry of the final decree of divorce, the parties negotiated a "short sale" of

---

[1]The guns included in the marital estate, with the values provided by Wife's father are as follows: 1) SIG P556 – $1,825; 2) Romanian AK-47 – $600; 3) DPMS Lower Receiver for AR Style Rifles – $200, 4) Two AR-15 .223s – $3,260 ($1,630 x 2); 5) Ruger 10/22 Rifle – $320; 6) Taurus PT145 – $400. The total calculation: $1,825 + $600 + $200 + $3,260 + $320 + $400 = $6,605.

[2]This is the figure proposed by Husband; arrived at by calculating the percentage of payments made during the marriage ($21,696.68 paid during marriage, or 53.89% of the total amount paid for the Hummer, then calculating 53.89% of the fair market value of the Hummer at the time of the hearing (53.89% of $13,205.00 = $7,116.18), then awarding half of that total to Wife ($7,116.19 / 2 = $3,558.09).

the property and reached an agreement between themselves and Husband's lender concerning the mortgage deficiency. Thus, the marital residence is not at issue in this appeal.

## ANALYSIS

Husband appeals the trial court's classification of some of the guns in his collection as marital property, the determination of the value of the marital gun collection, and the award of transitional alimony and attorney's fees to Wife. For her part, Wife contends Husband has not paid the judgment for Wife's portion of the marital estate; as such, Wife asserts she is entitled to post-judgment interest from the date of the entry of the Final Decree of Divorce. We will consider the issues in turn.

### CLASSIFICATION OF PART OF THE GUN COLLECTION AS MARITAL PROPERTY

Husband asserts that the trial court erroneously included certain guns in the marital estate which belonged to his father, Mr. Florea. The Final Decree of Divorce does not indicate which guns are included in the marital estate. However, the record makes it perfectly clear that the trial court relied on Husband's testimony and Husband's Trial Exhibit 7 to determine which guns belonged to Husband and which belonged to his father. Trial Exhibit 7 explicitly provides that the "Guns Purchased During Marriage" are the SIG P556, the Romanian AK-47, the Ruger 10/22 Rifle, the Taurus PT 145, two AR-15 .223(s), and the DPMS Lower Receiver for AR Style Rifles. When the values of the guns as testified to by Mr. Tippens are applied to the guns identified as marital property and added together, the total is $6,605, as provided in footnote 1, *infra*, and below. We therefore find this argument is without merit.

### VALUATION OF THE MARITAL GUN COLLECTION

After classifying the parties' property as either marital or separate, the trial court is charged with equitably dividing, distributing, or assigning the marital property in "proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). As part of its responsibility to divide the marital estate equitably, the trial court must determine the value of the property included. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). The parties have the burden to provide competent valuation evidence. *Id.* When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Id.* (citing *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995); *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)). Decisions regarding the value of marital property are questions of fact and we presume the trial court's factual determinations are correct unless the evidence preponderates against them. *Id.* (citing *John v. John*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996)).

Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). "Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)." *Kinard*, 986 S.W.2d at 230. "Trial courts have wide latitude in fashioning an equitable division of marital property." *Id.* Therefore, this court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). We defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tennessee Code Annotated § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

As discussed above, the trial court found that the marital gun collection is worth $6,605. This finding is based on the testimony of Mr. Tippens, who was qualified as an expert in gun valuation. He testified that he determined the values of Husband's guns based on his observation of the condition of each gun in May 2009, his experience collecting, buying, and selling guns for over fifty years, and the values provided in the *Kelley Blue Book of Gun Values 31st Edition*. He also testified that he was familiar with each type of gun in the marital gun collection, and was thus able to evaluate the level of "wear and just general condition" of Husband's guns. At the hearing, Husband testified that, like Mr. Tippens, Husband frequently bought and sold guns, and in his experience, the value of a gun "is usually not more than you paid for it."[3] However, he also openly admitted in testimony that he lacked expertise with gun valuation, and furthermore, that he was not familiar with the "fair market value" of any of his guns.

By accepting the value as testified to by Mr. Tippens, the trial court placed a value on the marital gun collection that was within the range of the values presented. *See Kinard*, 986 S.W.2d at 231 (stating "[i]f the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence."). Husband does not allege any deficiencies in Mr. Tippens' valuation methodology or in Mr. Tippens' reliance on the *Kelley Blue Book*. Nor does he identify any evidence in the record contradicting Mr. Tippens' testimony, other than his own lay opinion testimony that the purchase price more accurately reflects the value of the marital gun collection. Accordingly, we find the evidence does not preponderate against the trial court's holding that the marital gun collection is worth

---

[3]According to Husband's testimony, the total purchase price of the gun collection is $4,278, broken down as follows: 1) SIG P556, $1,628.00; 2) Romanian AK-47, $400; 3) Ruger 10/22 Rifle, $320; 4) Taurus PT145, $300; 5) Two (2) AR-15 .223s, $1500; 6) DPMS Lower Receiver, $130. At 50%, Wife's award for her share of the marital gun collection would be $2,139.

$6,605. Husband raises no other objections regarding the division of marital property; thus, the award to Wife in the amount of $8,065.94 is affirmed.

POST-JUDGMENT INTEREST

Wife requests post-judgment interest on the $8,065.94 money judgment for her portion of the marital estate, which she alleges Husband has not yet paid.

In Tennessee, the right to post-judgment interest is statutory. *Owens v. State*, 710 S.W.2d 518, 518-19 (Tenn. 1986). Like other money judgments, cash awards in divorce cases are money judgments which are subject to post-judgment interest pursuant to Tennessee Code Annotated § 47-14-121. *See Moss v. Moss*, No. M2010-010640COA-R3-CV, 2011 WL 1459170, at *3 (Tenn. Ct. App. Apr. 15, 2011) (citing *Inman v. Inman*, 840 S.W.2d 927, 931 (Tenn. Ct. App. 1992) (holding a husband was required to pay post-judgment interest on a cash award to wife for her share of the marital estate)). "[A] party's right to post-judgment interest is based on that party's entitlement to use the proceeds of the judgment after the award." *Vooys v. Turner*, 49 S.W.3d 318, 322 (Tenn. Ct. App. 2001). The interest accrues at a rate of 10% per annum except as provided by statute or contract, Tennessee Code Annotated § 47-14-121, beginning the date of the judgment is entered. *See* Tenn. Code Ann. § 47-14-122; *see also* Tenn. R. App. P. 41. The failure of a judgment or decree to specify post-judgment interest does not abrogate the responsibility imposed by the statute. *Tallent v. Cates*, 45 S.W.3d 556, 563 (Tenn. Ct. App. 2000).

The final divorce decree provides that Husband shall retain ownership of the Hummer, the marital gun collection, and the ING Shareholder account, and that:

> Husband shall pay to the Wife the full sum of . . . [$8,065.94] as the Wife's share of the division of the marital property, and the Wife is awarded a judgment for this amount. . . . Said property division amount shall be a judgment against the Husband and shall be secured by a lien against the Hummer vehicle, which was awarded to the Husband . . . . However, the Court specifically orders that the Husband shall begin paying the Wife on this judgment amount.

We have affirmed the trial court's valuation of Husband's gun collection and division of the marital estate. Therefore, if Husband failed to pay all or any part of the monetary judgment awarded to Wife by the time she was entitled to collect the money judgment, then she is entitled to post-judgment interest on any portion of the $8,065.94 money judgment that has not been timely paid, computed from the date of the entry of the judgment. *See Inman*, 840 S.W.2d at 932 (holding that interest is to accrue from the date of the entry of the divorce

decree). The record before us does not establish whether the judgment, or any part of it has or has not been paid; thus, we remand the issue to the trial court for such a determination.

TRANSITIONAL ALIMONY

We now turn to the trial court's decision to award Wife transitional alimony in the amount of $500 a month for twelve months. Husband argues that due to the length of the marriage, the pendente lite support paid during the divorce proceedings, and Wife's potential income following law school, Wife is not entitled to any type of alimony in any amount.

In Tennessee, trial courts are afforded wide discretion in determining whether there is a need for spousal support, and if so, the nature, amount, and duration of the award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). Absent an abuse of discretion, a trial court's decision to award spousal support will not be disturbed on appeal. *Id.* An abuse of discretion occurs when the trial court "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). The appellate court may not substitute its judgment for that of the trial court; rather, it should presume that the trial court's alimony decision is correct and review the evidence in the light most favorable to that decision. *Id.* at 105-06 (citing *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335).

The deference to trial court decisions regarding spousal support follows from the recognition that such decisions are "factually driven" and involve "the careful balancing of many factors." *Id.* (citing *Kinard*, 986 S.W.2d at 235). When determining whether to award alimony, courts are required to consider "all relevant factors," including but not limited to the relative earning capacity, obligations, needs, and financial resources of each party, the relative education and training of each party, duration of the marriage, the age, mental condition and physical condition of each party, the separate assets of each party, provisions made with regard to the marital property, the standard of living of the parties established during the marriage, the extent to which each party has made such tangible and intangible contributions to the marriage, the relative fault of the parties, and such other factors as are necessary to consider the equities between the parties. *See* Tenn. Code Ann. § 36-5-121(i). The two factors considered most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007).

Husband correctly identifies factors in this case that would tend to mitigate the need for alimony. *See* Tenn. Code Ann. § 36-5-121(i)(2)-(5). However, Husband fails to articulate how the presence of these factors alone establishes that the trial court applied the wrong legal standard, reached an illogical result, resolved the case on a clearly erroneous assessment of the evidence, or relied on reasoning that causes an injustice. *See Gonsewski*, 350 S.W.3d at 105 (citations omitted).

To the contrary, from the record in this case, it is clear the trial court considered all of the relevant factors when deciding whether to award alimony, and weighed each factor appropriately. The trial court found Wife has a need for alimony to enable her to meet her living and educational expenses until she graduates law school and takes the bar exam, at which time Wife anticipates she will get a higher-paying job and will no longer have steep educational expenses. The trial court also found Husband has the ability to pay, based on his substantial income and relatively low expenses. Husband has had a successful career for several years. Although he recently began his own independent contracting business, Husband still performs the same job in the same field, and expects to continue earning $5,700 a month as an independent contractor. Husband's main expense was the home mortgage payment; however, at the divorce hearing, he testified that he stopped making those payments and planned to move as soon as possible. His automobile is fully paid for, after he paid approximately $15,000 in extra payments from July through December 2008. At the hearing on the Petitions for Criminal Contempt, the proof established that Husband made substantial payments on several of his consumer credit cards, contributed to his retirement savings account, continued to engage in his expensive hobbies, and still had substantial surpluses left over in his checking account at the end of each month.

The trial court's alimony award is appropriate under the circumstances of this case. Transitional alimony is appropriate "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce." Tenn. Code Ann. § 36-5-121(g)(1). Wife was young when the parties married; both parties understood that she would continue her education so that she could eventually have a successful career. Husband had already achieved that goal for himself. *See* Tenn. Code Ann. § 36-5-121(i)(1) & (2). Wife needs a small amount of support, for a limited amount of time, in order to adjust to the reality of having to pay her own rent and other monthly expenses as a single person while she finishes school. Tenn. Code Ann. § 36-5-121(g)(1); *see also Mills*, 2010 WL 2059170, at *5. It is clear the trial court properly gave the most weight to Wife's need and Husband's ability to pay. *See Riggs*, 250 S.W.3d at 447. When weighing the other relevant factors – for example, the disparity in earning capacity, the fact that Husband had completed school and Wife had not, the short duration of the marriage, the parties' good health, the standard of living during the marriage, and the fact that Husband paid most of the household bills – the court, in the exercise of its

discretion, awarded Wife a small monthly alimony payment for a short period of time. Tenn. Code Ann. § 36-5-121(i)(1) – (4), (9), (10), & (12); *see also Crocker v. Crocker*, No. W2006-003530COA-R3-CV, 2006 WL 3613591, at *5 (stating that "duration of the marriage is only one of the relevant factors to be considered in deciding whether, and in what amount, to award alimony"). Thus, we affirm the award of transitional alimony in the amount of $500/month for twelve months.

WIFE'S ATTORNEY'S FEES

"[A]n award of attorney's fees in a divorce case constitutes alimony in solido." *Gonsewski*, 350 S.W.3d at 113 (citing Tenn. Code Ann. § 36-5-121(h)(1)). Thus, as is the case with any decision concerning whether to award alimony, the decision is within the sound discretion of the trial court, *Crabtree*, 16 S.W.3d at 361; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995), and the trial court is required to consider the relevant factors stated in Tennessee Code Annotated § 36-5-121(i), including "the relative earning capacity, obligations, needs, and financial resources of each party," *id.* § -121(i)(1), as well as Wife's need and Husband's ability to pay. *See Gonsewski*, 350 S.W.3d at 112-13.

Husband asserts the trial court erred in awarding Wife $15,000 for her attorney's fees. Husband takes the position that, for alimony in solido awards in particular, it is improper for the trial court to consider the obligor spouse's income when determining ability to pay; he asserts alimony in solido is improper unless it is awarded out of the obligor spouse's share of the marital estate. We find this argument without merit. The authority Husband cites in support of his argument, *Aleshire v. Aleshire*, 642 S.W.2d 729 (Tenn. Ct. App. 1981), relied on a version of Tennessee's alimony statute, Tennessee Code Annotated § 36-821, which has been revised and superseded. *See Andrews v. Andrews,* 344 S.W.3d 321, 344-45 (Tenn. Ct. App. 2010). The statute then in effect in 1981 stated that a court may award, as alimony in solido, "such part of the other spouse's real and personal estate as it may think proper." *Id.* at 733. As this court has explicitly held, "the statute cited in *Aleshire* has since been amended, and no longer has language so limiting an award of alimony in solido." *Andrews*, 344 S.W.3d at 344-45 (citing Tenn. Code Ann. § 36-5-121(i)) (also discussing how subsequent cases, *e.g., Goodman v. Goodman*, 8 S.W.3d 289 (Tenn. Ct. App. 1999)), which rely on *Aleshire*, are no longer good law with respect to the requirement that alimony in solido be awarded out of the obligor spouse's portion of the marital estate).

Considering Wife's need and Husband's ability to pay as discussed above, in addition to the fact that a significant portion of Wife's legal expenses were incurred during the contempt proceedings initiated due to Husband's willful and deliberate failure to pay Wife's pendente lite support, we find the trial court did not abuse its discretion in awarding Wife alimony in solido in the amount of $15,000 for her attorney's fees.

Wife seeks to recover the attorney's fees she incurred to defend this appeal. The trial court awarded Wife alimony in solido in the amount of $15,000 to defray, in part, her attorney's fees incurred at trial.

An award of attorney's fees is considered appropriate when "the final decree of divorce does not provide the obligee spouse with a source of funds, such as from property division or alimony in solido, with which to pay his or her attorney." *Yount v. Yount,* 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002) (citing *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992)). Moreover, when the dependent spouse has demonstrated that he or she is financially unable to procure counsel, and the other spouse has the ability to pay, the court may properly order the husband to pay the dependent spouse's attorney's fees. *Houghland*, 844 S.W.2d at 623.

In this case, Wife has limited resources from which to pay attorney's fees and the trial court awarded Wife few assets (because there were few assets); instead, the trial court elected to award her alimony in solido for the purpose of paying some of her attorney's fees, due in part to the disparity of the spouses' respective incomes. We have affirmed the award of attorney's fees to Wife and find that Wife is entitled to recover, at least in part, her attorney's fees incurred on appeal, the amount of which is in the sound discretion of the trial court. Therefore, on remand, the trial court shall make a determination of the appropriate award.

## IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Johnathan Matthew Florea.

_____
FRANK G. CLEMENT, JR., JUDGE